Tax Review Board of the City of Philadelphia *v.* Keystone Dyeing Co., Inc., Appellant.

Argued April 6, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Paul W. Lunkenheimer*, with him *Schumacker & Lunkenheimer*, for appellant.

*Stewart M. Weintraub*, Assistant City Solicitor, with him *Albert J. Persichetti*, Deputy in Charge of

Enforcement, *Stephen Arinson,* Chief Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, October 12, 1976:

In this tax appeal from the Court of Common Pleas of Philadelphia County, the Keystone Dyeing Co., Inc. (Keystone), appellant, asserts that it is entitled to a partial exclusion from the Philadelphia Mercantile License Tax (Tax) pursuant to Chapter 19-1000 of the Philadelphia Code (Code). This chapter of the Code excludes from taxation those "receipts or the portion thereof *attributable to any item of sale or lease* involving the bona fide delivery of goods, commodities, wares, or merchandise to a location regularly maintained by the other party to the transaction *outside the limits of the City* and not for the purpose of evading payment of the tax or any portion thereof; . . ." §19-1001(6)(c) of the Code. (Emphasis added.)

Keystone is engaged in dyeing and finishing textile garments and fabrics which are *owned by its customers and delivered* by them to Keystone's plant in Philadelphia. Keystone buys, blends, and compounds dyestuffs, applies the dyestuffs to the goods of its customers, and then delivers the finished dye-coated goods to various locations as the customers specify. Keystone had paid the tax on its entire gross receipts for the business for the years 1961 through 1966 inclusive, but, deciding that it had been entitled to a tax exclusion for a portion of its receipts, it petitioned the Tax Review Board of the City of Philadelphia (Board) for a refund in the amount of $25,141.-76. The Board held that Keystone's receipts from its business are entirely attributable to the performing of a service upon the goods of another within

the city limits and consequently refused to grant the refund. Keystone argued in its appeal to the court below and argues again here that the portion of its receipts attributable to the *sale of dye coating* applied to the goods owned and supplied by its customers from outside of the city and delivered to locations outside of the city should be excluded from the tax in accordance with the above cited Code provisions.

It would appear, and it is not otherwise contested by the parties here involved, that the Code draws a fundamental distinction between performing a service on goods and making a sale of goods. *See Philadelphia Tax Review Board v. Manheim Laundry Company*, 398 Pa. 265, 157 A.2d 372 (1960). Moreover, Section 19-1001(6)(d) of the Code also excludes from the tax "receipts or that portion thereof *attributable to any services performed outside* the limits of the City." (Emphasis added.)

As prior decisions of the Board involving other taxpayers would suggest, where the activity involves delivery of a defineable *item of sale* to localities outside the city limits, that portion of the business should be characterized as one involving sales. Receipts derived from such sales, therefore, are excluded from taxation in accordance with Section 19-1001(6)(c) of the Code. The characteristics of many business activities, of course, may make it difficult to distinguish between those companies which are making sales of items and those which are providing services. In this case, however, making the distinction is not difficult, and we believe that both the Board and the court below properly concluded that Keystone is here performing a service.

In its brief, Keystone describes its activities in citing the following "sequence of operations":

"(a)   Garments are received in cartons, unpacked, heat-treated and placed in net bags.

"(b)   Fabrics are received in continous rolls in tubular form, unrolled, steamed, heat-treated, cut and placed in net bags.

"(c)   The bagged garments and fabrics are scoured in kettles.

"(d)   Appellant purchases dyes and chemicals to be used by it in dyeing.

"(e)   Customers supply color samples. Appellant maintains a dye laboratory where highly trained personnel mix and compound dyestuffs and chemicals to obtain the desired color dye.

"(f)   The laboratory personnel advises the dye-mixing personnel of the desired formula and the latter then prepares the quantity of dye necessary for filling the order.

"(g)   The dye material coats the goods, the dye fills the pores and adheres to the surface of synthetic fibers. The dye can be removed from the garments and fabrics.

"(h)   The bagged goods are placed in kettles or vats, the dye and the chemicals put into the vats, and the goods are bathed at a controlled temperature for a fixed period of time, all under the supervision of the laboratory personnel.

"(i)   The dye goods are washed to removed excess dye and given centrifical extraction to remove water.

"(j)   The garments are unbagged, tumble-dried, folded and packed in cartons.

"(k)   The fabric is sewn back together, dried, steamed, rerolled to a determined yardage and width, and then packed in cartons." (Citations to record pages omitted.)

This outline clearly describes the performance of a service upon the goods of another, and to treat

any portion of this activity as a sale of dye goods would in our view be to disregard completely the distinction between businesses involving sales and businesses involving services.

While it may be possible for Keystone to determine the specific quantity of dyestuff which adheres to the dyed materials and is then delivered to its customers, this does not per se make its business activity in any sense related to the sale of an item. And, inasmuch as the service by Keystone is performed within the city limits, it is not entitled to either of the exclusions enumerated in Sections 19-1001(6)(c) and (d) of the Code.

Pointing to what might appear to be inconsistent decisions by the Board in prior cases involving business activities similar to those performed here, Keystone argues that the imposition of the tax here results in an unequal application of the law in violation of Article IX, Section 1 of the Pennsylvania Constitution, known as the uniformity clause, and of the 14th Amendment to the United States Constitution, which prohibits the states from denying equal protection of the laws. As an example, Keystone cites decisions of the Board providing for an exclusion from the tax for receipts that represent reimbursement for materials added to the goods of the customers of the business enterprise involved—such as trimmings added to the garments owned by the customers of a finishing company. We must remember, however, that the actions of a taxing authority carry a presumption of constitutionality and that any one challenging that action bears a heavy burden of proving its unconstitutionality. *Commonwealth v. Staley*, 21 Pa. Commonwealth Ct. 193, 344 A.2d 748 (1975). And, as was stated in *Stilman v. Tax Review Board*, 402 Pa. 492, 166 A.2d 661 (1961), evidence that prior rulings by a taxing agency may

appear inconsistent and may be incorrect is not sufficient to establish a denial of constitutional rights.[1] As the court there said, "in situations such as this—there must be a deliberate and purposeful discrimination in the application of the tax." *Stilman, supra,* 402 Pa. at 493, 166 A.2d at 662. Here we cannot discern any such deliberate discrimination on the part of the Board and we, therefore, do not believe that Keystone has established a violation of either the uniformity clause of the Pennsylvania Constitution or of the equal protection clause of the United States Constitution.

Accordingly, the decision and order of the Court of Common Pleas is hereby affirmed.

ORDER

AND Now, this 12th day of October, 1976, the decision and order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

---

[1] We are not here expressing any opinion as to whether or not the prior rulings of the Board cited by Keystone were properly made, for each of those cases, however similar to the one here involved, was still factually distinguishable in a significant way.