680 A.2d 887

Vincent C. MOTTER, Appellant,

v.

The MEADOWS LIMITED PARTNERSHIP; Charles J. Taylor, P.E., General Partner & Trustee, the Meadows Sewer Company, Robert G. Hartman t/d/b/a Whittock–Hartman Engineers and Penn Harris Construction Company, Inc., Appellees,

v.

KDS EXCAVATING, INC.

Superior Court of Pennsylvania.

Argued June 11, 1996.

Filed July 17, 1996.

522

Anthony Stefanon, Harrisburg, for appellant.

Michael R. Kelly, Harrisburg, for appellee Meadows Ltd. Partnership.

Scott D. Moore, Carlisle, for appellee Robert G. Hartman.

Karen S. Feichtenberger, Harrisburg, for appellee Penn Const.

Before TAMILIA, JOHNSON and MONTEMURO, JJ.

MONTEMURO, Justice.*

This is an appeal from the Orders of the Court of Common Pleas of Cumberland County granting summary judgments in favor of Appellees. For the following reasons, we affirm.

On August 23, 1989, Appellant Vincent Motter ("Appellant") was injured when the ten foot deep trench he was working in collapsed on top of him. The site of the accident was part of a construction project known as "The Meadows" located in

* Retired Justice assigned to Superior Court.

Middlesex Township, Cumberland County, Pennsylvania. Originally this land was owned by The Meadows Limited Partnership ("Meadows Limited") and Charles J. Taylor ("Taylor"). The Meadows Sewer Company ("Meadows Sewer") was incorporated by Meadows Limited and Taylor to construct, own, and operate the sewer facilities for the subdivision. Meadows Limited and Taylor laid out a series of subdivision plans for The Meadows. Final Subdivision Plan # 3 was the last plan designed (dated March 8, 1989) and was the plan adhered to by the parties. Robert G. Hartman, t/d/b/a Whittock–Hartman Engineers ("Hartman"), was hired by Meadows Limited, Taylor, and Meadows Sewer to design and engineer plans for construction of sewer facilities for The Meadows subdivision.

On June 30, 1989, Penn Harris Construction Company ("Penn Harris") purchased the land and the rights to The Meadows project known as Final Subdivision Plan # 3. Penn Harris hired KDS Excavating Inc. ("KDS"), an independent contractor, to install sanitary sewer facilities for the subdivision.

On August 23, 1989, KDS was excavating a portion of the Final Subdivision Plan # 3 marked manhole 3–3, Lot # 34, on the survey performed by Hartman. The survey revealed that the trench in this area was to be more than ten feet deep. Hartman's engineering drawings also showed that the soil at this location was unstable and, under applicable OSHA standards, required KDS to use shoring and bracing techniques to ensure worker safety. Representatives of KDS testified that they were unaware of these OSHA requirements and, therefore, did not follow them. Instead, workers for KDS "sloped" or "benched" the sides of the trench to prevent cave-ins. Appellant, an employee of KDS, was working in the ten foot deep trench, when the sides of it collapsed on top of him causing his injuries.

On August 12, 1991, Appellant brought suit for his injuries against: the original landowner and designer of the subdivision plans, Meadows Limited and Taylor; the company created to own and operate the sewer facilities for the Meadows

subdivision, Meadows Sewer; the landowner at the time of the accident, Penn Harris; and the engineer who designed the construction of the sewage facilities for the subdivision, Hartman. In addition, appellant's employer KDS was joined as an additional defendant on December 6, 1991.

On July 18, 1994, the trial court granted summary judgment as to Meadows Limited, Taylor, Meadows Sewer, and Hartman. On June 9, 1995, the court granted Penn Harris' motion for summary judgment. Appellant now appeals these decisions as to all defendants except Meadows Sewer.

On a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to existence of genuine issue of material fact must be resolved against the moving party. Summary judgment may be entered only in cases where the right is clear and free from doubt. *Hayward v. Medical Ctr. of Beaver County*, 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992). In such clear cases, summary judgment is proper if the moving party is entitled to judgment as a matter of law. *Santillo v. Reedel*, 430 Pa.Super. 290, 294, 634 A.2d 264, 266 (1993). After viewing the facts of the case in a light most favorable to Appellant, the trial court determined that no genuine issues of material fact existed and, therefore, granted appellants' motions for summary judgment. We agree.

In reviewing an order granting summary judgment, an appellate court must determine whether there is a genuine issue of material fact. The grant of summary judgment can be sustained only if pleadings, depositions, answers to interrogatories and admissions show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. *Logan v. Mirror Printing Co. of Altoona, Pa.*, 410 Pa.Super. 446, 449, 600 A.2d 225, 227 (1991). The Superior Court must examine the record in the light most favorable to the nonmoving party, and will only disturb the trial court's decision if there is an abuse of discretion or an error of law. *Second Fed. Sav. and Loan Ass'n. v. Brennan*, 409 Pa.Super. 581, 585, 598 A.2d 997, 998 (1991).

■ The trial court properly granted summary judgment as to Meadows Limited, Taylor and Hartman. After a review of the records and the parties briefs, we find that the trial court adequately addressed and disposed of Appellant's arguments. We acknowledge the fact that the trial court did not address the contention made by Appellant that Taylor and Meadows Limited should be vicariously liable for the negligence of Hartman under sections 416 and 427 of Restatement (Second) of Torts. However, based on the trial court's proper finding that Hartman was not negligent, there is no need to discuss these claims.

■ Appellant also disputes the trial court's grant of summary judgment in favor of Penn Harris. Penn Harris owned the property on which this accident happened and was the party responsible for hiring KDS to excavate the trench in which Appellant was injured. As a general rule, "the employer of an independent contractor is not liable for the physical harm caused [to] another by an act or omission of the contractor or his servant." *Mentzer v. Ognibene*, 408 Pa.Super. 578, 589, 597 A.2d 604, 610 (1991), *alloc. denied*, 530 Pa. 660, 609 A.2d 168 (1992) (citing *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 151, 189 A.2d 271, 277 (1963) (citations omitted)). "An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract, and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises." *Mentzer*, 408 Pa.Super. at 589, 597 A.2d at 610 (citing *Hader*, 410 Pa. at 151, 189 A.2d at 277).

■ An exception to this general rule is recognized, where the independent contractor is hired to do work which the employer should recognize as likely to create a special danger or peculiar risk of physical harm to others unless special precautions are taken. Restatement (Second) of Torts, §§ 416 and 427 (1965) (adopted as law of Pennsylvania in *Philadelphia Elec. Co. v. James Julian, Inc.*, 425 Pa. 217, 228 A.2d 669 (1967)). Appellant argues that the sewer trench

KDS was hired to excavate in this case presented such a special danger or peculiar risk as to fall within this exception. We disagree.

To determine whether a special danger or peculiar risk exists, the court in *Ortiz v. Ra–El Dev. Corp.*, 365 Pa.Super. 48, 528 A.2d 1355 (1987), *alloc. denied,* 517 Pa. 608, 536 A.2d 1332 (1987), established a two prong test: 1) Was the risk foreseeable to the employer of the independent contractor at the time the contract was executed?; and 2) Was the risk different from the usual and ordinary risk associated with the general type of work done, i.e., does the specific project or task chosen by the employer involve circumstances that were substantially out-of-the-ordinary? *Id.* at 53, 528 A.2d at 1359. This two step process requires that:

> "the risk be recognizable in advance and contemplated by the employer [of the independent contractor] at the time the contract was formed ... [and that] it must not be a risk created solely by the contractor's 'collateral negligence' ... [i.e.,] negligence consisting wholly of the improper manner in which the contractor performs the operative details of the work."

*Edwards v. Franklin & Marshall College,* 444 Pa.Super. 1, 7, 663 A.2d 187, 190 (1995) (*quoting Mentzer,* 408 Pa.Super. at 592, 597 A.2d at 610).

The distinction between ordinary risk and peculiar risk is a mixed question of law and fact which can be made, in clear cases, by the trial judge as a matter of law. *Ortiz,* 365 Pa.Super. at 56, 528 A.2d at 1359 (*quoting McDonough v. United States Steel Corp.,* 228 Pa.Super. 268, 276 n. 6, 324 A.2d 542, 546 n. 6 (1974)). It should also be noted that "the Peculiar Risk Doctrine is an exception to a general rule and, [as such], it should be viewed narrowly." *Edwards,* 444 Pa.Super. at 7, 663 A.2d at 190. As the court noted in *Marshall v. Southeastern Pa. Transp. Auth.,* 587 F.Supp. 258 (E.D.Pa.1984):

> In order for the liability concepts involving contractors to retain any meaning, especially in industries such as con-

struction where almost every job task involves the potential for injury unless ordinary care is exercised, peculiar risk situations should be viewed narrowly, as any other exception to a general rule is usually viewed.

587 F.Supp. at 264.

Even when viewed in a light most favorable to Appellant, the facts of this case do not support the Appellant's argument that the peculiar risk doctrine should apply because, as the trial court noted, "[d]igging a sewer trench around ten feet deep in stable or unstable soil appears to be nothing more than a common, routine worksite procedure." *Motter v. The Meadows Ltd. Partnership et al.*, No. 2740 Civ. 1991 pp. 9–10 (Cumberland Co. July 18, 1994). Thus, the trial court did not err in granting Penn Harris' motion for summary judgment.

Excavation of a sewage trench brings with it attendant risks, one of which is collapse of the trench walls. Appellant cites a number of Pennsylvania cases for the proposition that digging a sewer trench in and of itself poses a peculiar risk of harm to others. *Heath v. Huth Engineers, Inc.*, 279 Pa.Super. 90, 93, 420 A.2d 758, 760 (1980) (holding that employer of independent contractor properly held liable for collapse of sewer trench); *Dudash v. Palmyra Borough Auth.*, 335 Pa.Super. 1, 9, 483 A.2d 924, 928 (1984) (finding that employer of independent contractor may be held liable for death of employee of contractor hired to dig sewer trench); *Ortiz*, 365 Pa.Super. at 54, 528 A.2d at 1358–59 (stating, in dicta, that under the *Heath* facts, employer of independent contractor would be liable for peculiar risk posed by digging of sewer trench).

However, we disagree with the premise that excavating a sewage ditch poses a peculiar risk of harm to others. The *Heath* decision, which so holds, gives the "peculiar risk" issue such cursory treatment that it is of little help to us in our decision. We feel that our recent decision in *Edwards v. Franklin and Marshall College* serves as a better guide to applying the peculiar risk doctrine to the facts before us today. While our decision in *Edwards* did not involve a

trenching accident, the facts are quite analogous to those faced by this court in the instant case.

In *Edwards,* a construction worker employed by an independent contractor was injured when he fell through a roof on property owned by the contractor's employer. 444 Pa.Super. at 3, 663 A.2d at 188. The contractor was hired to do primarily exterior renovations including a significant amount of rooftop work. *Id.* The plaintiff was injured when a portion of the roof he was working on collapsed and he fell through the hole to the floor below. *Id.* at 4, 663 A.2d at 188–189. For our purposes, it is worth noting that the contractor in *Edwards* was aware of the dangerous condition of the roof, as was the plaintiff, who, at the time he was injured, was fixing a hole where a fellow employee had previously fallen through. *Id.* at 3, 663 A.2d at 188.

In the instant case, the independent contractor was hired to excavate a sewer trench. Appellant was injured when a portion of the trench he was working on collapsed on top of him. The record reveals that the employees, including Appellant, were aware of the dangerous condition of this trench. It is also clear from the testimony of KDS employees that the trench in which Appellant was injured had partially collapsed prior to the day of the accident.

The court in *Edwards* recognized that the contractor in that case was in the business of constructing and reconstructing commercial structures. *Id.* at 8, 663 A.2d at 191. The dangerous condition of the building was known by all of the parties involved. *Id.* "Because the remodeling of these old structures necessarily involved working high off the ground, the danger of falling is apparent." *Id.* The court went on to conclude, "[c]leary, the risk that [plaintiff] might fall through the roof, given the known condition of the building that was being repaired, did not present a 'special danger' or 'peculiar risk.'" *Id.*

The same can be said of the trench dug by KDS in the instant case. Excavating a sewer trench involves work in deep holes where the danger of collapse is an obvious and

unavoidable risk. KDS employees testified that they were aware of the danger of collapse. We agree with the trial court's finding that cave-in of a sewer trench is not an unusual or unexpected risk, but rather, is a risk faced by excavating companies every day.

We are also unpersuaded by Appellant's argument that the condition of the soil in this case made the project unusually dangerous. While Appellant's expert testified that the shale soil surrounding the trench posed a significant risk of cave-in, whether the risk is "peculiar" for purposes of sections 416 & 427 is a legal determination. We conclude that the conditions confronted by KDS were not so unusual or out-of-the-ordinary as to pose a peculiar risk to others. As the court noted in *Ortiz*, "all construction work involves a risk of some harm; only where the work is done under unusually dangerous circumstances does it involve a 'special danger' or 'peculiar risk.'" *Id.* at 7–8, 528 A.2d at 1359.

The record reveals that KDS had been doing sewer work for four years prior to the accident. It is also clear from the record that employees of KDS had worked in shale soil before and were aware of its propensity to cave-in. In fact, the record revealed that soil had repeatedly fallen into the trench from the side walls. According to testimony of KDS employees, because of a series of unstable incidents in the trench, a trench box had been brought to the worksite. Unfortunately for Appellant, this safety device was never used.

■ Appellant maintains that because OSHA has set a number of safety standards to be followed when working with this type of soil, the risk posed by digging this trench was peculiar or especially dangerous.[1] We disagree. In this case,

1. OSHA ("Occupational Safety and Health Act") Section 1926.652(a) provides minimum standards for safe trenching operations:

   1926.652 Specific trenching requirements.
   (a) Banks more than 5 feet high shall be shored, laid back to a stable slope, or some other equivalent means of protection shall be provided where employees may be exposed to moving ground or cave-ins. Refer to Table P–1 as a guide in sloping of banks ...

as was the case in, *Lorah v. Luppold Roofing Co., Inc.*, 424 Pa.Super. 439, 622 A.2d 1383 (1993), "[w]hat made the activity of increased risk was not the activity itself, which is normally of minimal risk, but the failure of the independent contractor (and/or his servants) to take adequate precautions." *Id.* at 436, 622 A.2d at 1386. We conclude that the task of digging a trench, when done properly, is not one that is peculiarly dangerous. Appellant made no showing that his accident would have occurred had the proper safety precautions been taken. It was KDS's failure to abide by the OSHA rules and regulations, and not the nature of the soil, which increased the danger of cave-in. A number of other jurisdictions have already taken the position that the task of digging trenches does not present any special danger or peculiar risk when proper safety measures are taken. *See, e.g., Peterson v. City of Golden Valley*, 308 N.W.2d 550 (N.D.1981) (finding that trenching project does not present extraordinary risk when standard safety precautions are taken); *Micheletto v. State of Montana*, 244 Mont. 483, 798 P.2d 989 (1990) (adopting the position taken by the North Dakota Supreme Court in *Peterson*); *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983) (concluding that injuries resulting from the caving in of ditches because of lack of proper safety precautions are direct result of negligence of contractor in performance of excavation work).

Furthermore, we conclude that Penn Harris is not liable for KDS's failure to take proper safety precautions. As we said in *Peffer v. Penn 21 Assocs.*, 406 Pa.Super. 460, 594 A.2d 711 (1991):

> [v]iolation of safety conditions alone ... cannot be a basis for carving out exceptions to the rule that the owner is not liable for injuries incurred by employees of a subcontractor, as to do so would nullify the rule for all practical purposes since many, if not most, industrial accidents can be attrib-

Table P–1 states that "[c]lays, silts, loams or nonhomogeneous soils require shoring or bracing" and "[t]he presence of groundwater requires special treatment."

uted to a failure to comply with safety regulations of either state or federal agencies.

*Id.* at 465, 594 A.2d at 713. Penn Harris was justified in believing that KDS would follow the legally required safety precautions necessary to protect its workers. As stated in Comment b of section 426 of the Restatement (Second) of Torts, the employer of an independent contractor "is not required to contemplate or anticipate abnormal or unusual kinds of negligence on the part of the contractor, or negligence in the performance of operative details of the work which ordinarily may be expected to be carried out with proper care ..." Further support for this position is found in Comment b of section 427 of the Restatement (Second) of Torts: The employer is only liable if the danger is "normally to be expected in the ordinary course of the usual or prescribed way of doing [the work] ..." Section 427 "has no application where the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it ..." Restatement (Second) of Torts § 427 cmt. d (1965).

This reasoning was recently applied by the court in *Mentzer*. In that case, the plaintiff was injured when he fell through a stairwell opening that lacked proper safety devices. *Id.* at 583, 597 A.2d at 607. The court stated that "the lack of such protective devices at the perimeter of the stairwell opening is the result of the ordinary negligence by the contractor in the operative details of the work and is a classic example of collateral negligence by the contractor ... for which the property owner is not responsible." *Id.* at 589, 597 A.2d at 611. In the instant case, Appellant's accident was a direct result of KDS's failure to install the trench box as is required under applicable OSHA regulations. The record clearly indicates that this device was not only available, but was, in fact, at the worksite at the time of Appellant's accident. The work itself in this case was not peculiarly or especially dangerous, but rather, KDS was negligent in the manner in which it went about performing the task. Because this accident was caused by the ordinary negligence of KDS in

the "operative details" of digging the sewer trench, Penn Harris is not responsible for the injuries suffered by Appellant.

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Penn Harris and dismiss all claims made by Appellant.