# Pawlowski v. Conrail Inc.

C.P. of Allegheny County, no. GD96-1087.

*Thomas Hollander,* for plaintiff.

*Stephen M. Houghton,* for defendant Conrail Inc.

*George E. Yokitis,* for defendant Shannon & Wilson Inc.

WETTICK, *J.,* February 25, 1999—Conrail Inc.'s motion for summary judgment is the subject of this opinion and order of court. The issue raised through this motion is whether plaintiff may raise claims against Conrail based on the negligence of a general contractor whom Conrail hired to perform work on Conrail's property.

This is a wrongful death and survival action arising out of the death of Gerald F. Lynch. Mr. Lynch died as the result of the collapse of a portion of a roof in a railroad tunnel (Allegheny Tunnel). Conrail owns the tunnel. Conrail had contracted with Shannon & Wilson Inc. to perform construction management services and with Monterey Construction to enlarge this tunnel. Mr. Lynch was a Monterey employee.

It is Conrail's contention that the evidence establishes that it was the contractor's responsibility to take precautions to avoid this type of rock fall and it was the contractor's negligence which caused the rock fall. Reply brief in support of motion for summary judgment at 10. Conrail relies on the general rule that an employer of an independent contractor is not liable for the physical harm caused to another by an act or omission of that independent contractor or its servants. See *Motter v. Meadows Limited Partnership,* 451 Pa. Super. 520, 680 A.2d 887 (1996), and cases cited therein. See section 409 of the Restatement (Second) of Torts which provides that except as stated in sections 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the con-

tractor or his servants. Comment (b) to section 409 states that the explanation commonly given for this rule is that since the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise. Thus, the contractor rather than the employer is the proper party to be charged with the responsibility of preventing the risk and bearing and distributing it.

## I.

It is plaintiff's position that even assuming that Monterey was an independent contractor with full control over the manner in which the work was to be done, Conrail is liable for Monterey's negligence because the work that Monterey was performing was exceptionally dangerous. This case, according to plaintiff, is not governed by the general rule that an owner is not responsible for the negligence of its contractor but rather by exceptions to this general rule that hold the owner responsible for the activities of its contractor. These exceptions upon which plaintiff relies are set forth in section 416 and section 427 of the Restatement (Second) of Torts.

Section 416 of the Restatement (Second) of Torts reads as follows:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Section 427 of the Restatement (Second) of Torts reads as follows:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

In *Philadelphia Electric Company v. Julian,* 425 Pa. 217, 228 A.2d 669 (1967), the Supreme Court adopted sections 416 and 427 as the law of this Commonwealth. It described the impact of these exceptions as follows:

"Sections 416 and 427 recognize that there exists a vicarious liability on the part of an employer of an independent contractor, which imposes upon the former responsibility in damages for the negligence of the latter, regardless of the fault of the former." *Id.* at 220, 228 A.2d at 671.

Also see *Heath v. Huth Engineers Inc.,* 279 Pa. Super. 90, 93, 420 A.2d 758, 760 (1980) (employee of independent contractor was killed when a trench collapsed; court held that the owner was liable under section 416 because this section "imposes liability upon an employer regardless of control, the theory being that an employer hiring an independent contractor to do particularly dangerous work ought not to be allowed to insulate himself from liability").

In *Colloi v. Philadelphia Electric Company,* 332 Pa. Super. 284, 481 A.2d 616 (1984), the plaintiff—an employee of independent contractor's subcontractor—was injured when breaking through concrete with a jackham-

mer and striking an electric conduit. The plaintiff raised claims against the owner (Philadelphia Electric) based on the negligence of the independent contractor and its subcontractor. The trial court directed a verdict in favor of the owner; the Superior Court reversed. It ruled that the plaintiff's evidence was sufficient to make out a prima facie case against the owner under section 416 and section 427 of the Restatement. In its opinion, the court ruled that employees of an independent contractor are among the third parties to whom the duties specified in section 416 and section 427 apply. The court described the duties which the owner owes under section 416 and section 427 as follows:

"The duties defined in these sections are said to be 'non-delegable'; they impose vicarious liability for the negligence of an independent contractor upon one who employs the contractor to do work involving heightened risks of physical harm to third parties." *Id.* at 296, 481 A.2d at 622. (citations omitted)

The remaining issue in part I is whether the evidence, as construed most favorably to plaintiff, makes out the elements of a case under section 416 and section 427. The Pennsylvania courts use the analysis developed in *Ortiz v. Ra-El Development Corp.,* 365 Pa. Super. 48, 528 A.2d 1355 (1987), in deciding whether the section 416-section 427 exception applies.

In that case, an employee was injured when a 14-foot high scaffold collapsed. The employee, relying on section 416 and section 427, sued the owner based on allegations that its contractor failed to assemble the scaffolding in accordance with OSHA standards. The trial court granted the owner's motion for summary judgment; it ruled that the special risk exception to the general rule

of nonliability of an employer of an independent contractor was not applicable. The Superior Court affirmed.

In its opinion, the court blended section 416 and section 427 into a single exception that is applicable "where the work to be performed by the independent contractor involves special danger or peculiar risk." *Id.* at 52, 528 A.2d at 1357. (footnote omitted) It ruled that the determination of whether a special danger or peculiar risk exists is a mixed question of law and fact and may, in clear cases, be made by the trial judge as a matter of law. *Id.* at 56, 528 A.2d at 1359. It adopted the following test for determining whether a special danger or peculiar risk exists:

"We hold that a special danger or particular risk exists where:

"(1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, *i.e.,* a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measures; and

"(2) the risk is different from the usual or ordinary risk associated with the general type of work done, *i.e.,* the specific project or task as chosen by the employer involves circumstances that are substantially out-of-the-ordinary." *Id.* at 53, 528 A.2d at 1358.

The court said that its test should be applied in a manner that creates a narrow exception to the general rule of employer nonliability. Otherwise, this exception to the general rule will become the rule rather than the exception because all construction work involves a risk of some harm.

The court said that the second prong of its test focuses on the nature of the work to be performed and involves a

two-step analysis. First, a court examines the risks that would be posed by the general type of work to be performed under typical circumstances. Next, the court determines whether the circumstances under which the general work is done (*i.e.,* the specific project or task) introduces a different kind or level of risk.

The court ruled that the second prong of the test was not met in this case. The court concluded that all scaffolding work does not involve a special danger or peculiar risk and that there was nothing about the specific project upon which the plaintiff was working or the task that the plaintiff was performing which involved circumstances that were substantially out of the ordinary.

The court distinguished this case from *Heath v. Huth Engineering Inc., supra,* in which an employer was held liable for the death of an independent contractor's worker who was killed digging a sewer trench because of "the specially dangerous circumstances under which the digging was done, *i.e.,* in a sewer trench." *Ortiz, supra,* 365 Pa. Super. at 54, 528 A.2d at 1359. It distinguished *Colloi v. Philadelphia Electric Company, supra,* because "[h]ere again the general task of digging was not specially dangerous but the circumstances surrounding the specific task made it specially dangerous." *Ortiz, supra,* 365 Pa. Super. at 55, 528 A.2d at 1359. The court stated that Ortiz's injuries, on the other hand, were inflicted during "routine construction work on a 14-foot high scaffold [which] clearly involves no special danger or peculiar risk." *Id.* at 56, 528 A.2d at 1359.

The present case falls within the exception to the general rule that the *Ortiz* opinion recognized. According to the facts most favorable to plaintiff, the Allegheny Tunnel is a single track tunnel constructed in the late 1800s.

The tunnel is 3,570 feet long. The construction project that is the subject of this litigation involved both increasing the height of the entire existing tunnel to allow for double-stacked railroad cars and widening the entire existing tunnel to add a second rail line. Excavation was carried out from both ends working toward the middle. The excavation of the tunnel was done by blasting. The project involved removal of a tunnel lining that had been in place for over a century. The brick and masonry liner of the existing tunnel hid bad ground conditions. Difficult ground conditions and old coal mining operations were encountered during the excavation.

This was not a routine blasting/construction operation. Because of the magnitude of the project and the age and condition of the existing tunnel, work was being performed under unusually dangerous circumstances. If (under the facts most favorable to plaintiff) the special dangers/peculiar risk exception does not apply to this project, it is unclear when it would apply.

The cases upon which Conrail relies (*Motter v. Meadows Limited Partnership, supra; Edwards v. Franklin & Marshall College,* 444 Pa. Super. 1, 663 A.2d 187 (1995); *Lorah v. Luppold Roofing Co. Inc.,* 424 Pa. Super. 439, 622 A.2d 1383 (1993); *Mentzer v. Ognibene,* 408 Pa. Super. 578, 597 A.2d 604 (1991), and *Peffer v. Penn 21 Associates,* 406 Pa. Super. 460, 594 A.2d 711 (1991), did not involve working environments that presented peculiar risks. In *Motter,* the plaintiff was injured when a 10-foot deep trench in which he was working collapsed. The court ruled that digging in a 10-foot deep sewer trench is a routine work site procedure; the conditions were not so unusual or out of the ordinary as to pose a peculiar risk to others.

In *Edwards,* the employee was injured when he fell through a roof. The peculiar risk doctrine did not apply because the work involved routine remodeling of an older structure.

In *Lorah,* the plaintiff was injured when he fell from a ladder that was not secured. The court ruled that the peculiar risk doctrine did not apply because the task being performed was nothing more than routine work site procedure and the construction site presented only ordinary risks.

In *Mentzer,* the plaintiff fell because a hole cut in the floor for a stairway in a two-story building did not have a railing, toe boards around its perimeter, or a sufficient floor hole covering. The court ruled that the special risk doctrine did not apply because "[t]here was nothing about this particular construction project, or the surroundings or circumstances of its performance, that either created or heightened this risk." 408 Pa. Super. at 593, 597 A.2d at 611.

In *Peffer,* plaintiff fell when a ladder kicked out from under him. The peculiar risk doctrine did not apply because the danger encountered was not different from that normally associated with the general type of work being performed.

Because the project at which plaintiff was killed created a heightened risk of falling rock, I deny Conrail's motion for summary judgment seeking dismissal of plaintiff's claims based on section 416 and section 427 of the Restatement (Second) of Torts.

## II.

Plaintiff also claims that Conrail is liable for activities of its general contractor (Monterey) because Conrail

exercised control over the manner in which Monterey performed its work. See Restatement (Second) of Torts §414 which reads as follows:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

It is Conrail's position that the evidence, as construed most favorably to plaintiff, does not support a finding that Conrail exercised control over the manner and method of the work performed by the general contractor. Consequently, summary judgment should be granted as to any claims that are not based on section 416 and section 427. Plaintiff relies on case law holding that the independent contractor rule applies where the owner has only a general right of inspection and supervision that an owner ordinarily enjoys and exercises to insure that it is receiving the performance that it bargained for. See *Brletich v. United States Steel Corp.,* 445 Pa. 525, 285 A.2d 133 (1971); *Hader v. Coplay Cement Manufacturing Co.,* 410 Pa. 139, 189 A.2d 271 (1963); *Celender v. Allegheny County Sanitary Authority,* 208 Pa. Super. 390, 222 A.2d 461 (1966).

Neither party discussed the issue of who bears the burden of proof with respect to whether Monterey should be characterized as an independent contractor over which Conrail did not exercise sufficient control to subject it to liability. If Conrail has the burden of proof, under the *Nanty-Glo* rule, it cannot prevail.[1]

---

1. Under the *Nanty-Glo* rule (*Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932)), oral testimony alone of the

Even assuming that plaintiff bears the burden of proof, the evidence, as construed most favorably to plaintiff, establishes that Conrail, through Shannon & Wilson, exercised significant control over the manner and method of the work that Monterey was performing. At the time of the accident, Mr. Kevin Miller was the superintendent for the Allegheny Tunnel renovation project for Monterey. He was responsible for overseeing the entire project in the field. According to his affidavit, Shannon & Wilson was hired by Conrail to perform construction management with regard to the tunnel. Monterey, with input from Shannon & Wilson, determined what work would be done, when the work would be done, who would do the work, and how the work would be done. (Exhibit H, paragraphs 12, 13, 19, and 34.)[2]

Mr. Robert Robinson, the site manager and later the project manager with Shannon & Wilson, testified concerning Shannon & Wilson's involvement with Monterey. (Exhibit F.) Shannon & Wilson had arguments with Monterey with regard to smooth-wall blasting and about overblasting that resulted in excessive quantities of rock. (T. 111-15.) Shannon & Wilson made recommendations concerning the placing and spacing of blast holes because Monterey was blasting outside of the payline; it made recommendations concerning the angles of the blast

party with the burden of proof is generally insufficient to establish the absence of a genuine issue of material fact. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989).

2. The exhibits described by letter are attached to Conrail's motion for summary judgment. The exhibits described by number are appendices of exhibits and depositions in support of plaintiff's brief in opposition to Consolidated Rail Corporation's motion for summary judgment.

holes because excessive outward angles were resulting in increased requirements for concrete and somewhat decreased tunnel stability. (T. 119-24.) Shannon & Wilson rejected batches of shotcrete that were delivered because they did not have the correct consistency. (T. 132.) Shannon & Wilson intervened because of Monterey's failure to install depth probes (T. 132-33); Shannon & Wilson intervened with respect to the spacing of rock bolts which, inter alia, are designed to minimize exposure of workmen to rock falls. (T. 134, 165-66.) Shannon & Wilson participated with the contractor in vibration monitoring and assisted the contractor by having Shannon & Wilson employees measure the blast and monitor the concrete quantities. (T. 176-77.) Shannon & Wilson provided input to Monterey when Monterey deviated from established procedures and methods for blasting and roof support. (T. 178.)

Similar testimony was offered in the excerpts of the deposition of Mr. Robinson attached as an appendix to plaintiff's brief. Directions were given by Shannon & Wilson engineers to Monterey during the construction including that for one specific area all rock bolts be 15 feet long and that the initial shotcrete lining be Bekart fibre rather than Novocon. (T. 245-46.) Shannon & Wilson prepared memos advising the contractor as to when full face excavation would be permitted. (T. 263.) There was a continuing battle with the contractor over staggering of the two headings versus a single heading. (T. 361-65.) There were discussions concerning the length of unsupported rock. (T. 386-88.) Shannon & Wilson reviewed resumes of nozzlemen to determine their experience. (T. 426-27.)

Conrail's reply brief in support of motion for summary judgment characterizes testimony and evidence as demonstrating that Shannon & Wilson monitored the blasting, determined the length of the tunnel to be excavated with each blast, made decisions regarding design changes, and issued directives and made decisions regarding the blast activity (no. 6 at 4-5); that it was Shannon & Wilson's responsibility to monitor the application of the shotcrete (no. 7 at 5); that it was Shannon & Wilson who made the determination on the rock bolt installation, the type of rock bolts to be applied, and the use of tension as opposed to untensioned rock bolts (no. 8 at 5-6); that it was Shannon & Wilson who approved the grouting plan, decided to bring in a grouting subcontractor and determined what strategy to follow when difficult ground conditions were encountered (no. 9 at 6); that it was Shannon & Wilson who approved resumes of nozzlemen of Monterey and who ordered Monterey to hire Hydro-Group as a subcontractor (no. 10 at 6-7); and that it was Shannon & Wilson who controlled the other general conditions on the job (no. 11 at 7).

Plaintiff contends that the control exercised by Shannon & Wilson must be attributed to Conrail because Conrail hired Shannon & Wilson and Shannon & Wilson exercised authority over Monterey as Conrail's agent. In other words, under the evidence as construed most favorably to plaintiff, Monterey was not an independent contractor because of the control that Shannon & Wilson exercised over the details of the work. This is not a situation in which Monterey was free to do work in its own way.

It is Conrail's position that Shannon & Wilson was an independent contractor that it hired to supervise the work

of its general contractor. Therefore, it is not liable because of any control that Shannon & Wilson exercised over Monterey.

Conrail cites only one case in support of its position that it is not liable where it is controlling the work of its general contractor through an independent contractor. *Fisher v. United States of America*, 441 F.2d 1288 (3d Cir. 1971). This case is not applicable because it did not involve a fact situation in which any entity exercised control over the general contractor. The court ruled that the independent contractor rule applied because the general contractor and its agents controlled the project.

At this stage of the proceedings, I do not need to decide whether Conrail would be liable if Shannon & Wilson was exercising control over Monterey's work as an independent contractor. The evidence, as construed most favorably to plaintiff, indicates that where problems between Shannon & Wilson and Monterey were not resolved, Shannon & Wilson made recommendations to and sought direction from Conrail as to approaches it should take. In other words, the evidence does not necessarily support a finding that Shannon & Wilson was given a defined task and that Conrail played a passive role with respect to the work that Shannon & Wilson performed and the control that Shannon & Wilson exercised.

For these reasons, I enter the following order of court:

## ORDER

On February 25, 1999, it is hereby ordered that the motion for summary judgment of Conrail Inc. is denied.