Jonathon OLIN and Mary M. Olin Plaintiffs,

v.

GEORGE E. LOGUE, INC., Third–Party Plaintiff.

Ward Manufacturing, Inc., Third–Party Plaintiff,

and/or

E.A. Ward Excavating, Inc., Third–Party Defendant, Defendants,

v.

Wellco, Inc., t/d/b/a Welliver–McGuire, Inc., Third–Party Defendant.

No. 4:CV–98–1550.

United States District Court, M.D. Pennsylvania.

Oct. 24, 2000.

**466**

John L. Perticone, Vestal, NY, for plaintiffs.

Jeffrey S. Lee, Reading, PA, for defendant/third-party defendant E.A. Ward Excavating, Inc.

John P. Finnerty, Scranton, PA, for third-party defendant Welliver–McGuire.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On September 18, 1998, plaintiffs Jonathon and Mary Olin commenced this action with the filing of a complaint against defendants George E. Logue, Inc. and Ward Manufacturing, Inc. (Ward).[1] Plaintiffs are husband and wife residing in Beaver Dams, Chemung County, New York. Jonathon Olin alleges negligence on behalf of defendants in causing personal injuries sustained when he fell into an excavation pit on a construction site owned by Ward.[2] Mary Olin alleges loss of consortium stemming from her husband's purported physical and mental injuries.

On November 2, 1998, plaintiffs filed an amended complaint naming as an additional defendant E.A. Ward Excavating, Inc. (Ward Excavating). Ward Excavating is the excavation subcontractor hired by Welliver–McGuire, Inc. (Welliver), plaintiff's employer and general contractor retained by Ward for the construction of a metal casting facility on Ward's property. On April 7, 1999, Ward filed a third-party complaint against Wellco, Inc. t/d/b/a Welliver.[3] Thereafter, on August 9, 1999, Ward filed an amended third-party complaint terminating Wellco, Inc. t/d/b/a Welliver as third-party defendant and naming instead Welliver. On October 5, 1999, Welliver filed a cross-claim against Ward Excavating.

Now before the court are motions for summary judgment filed by defendants Ward, Welliver and Ward Excavating pursuant to Fed.R.Civ.P. 56(c). For the reasons that follow, we will grant the summary judgment motions of all three defendants.

### DISCUSSION:

#### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

> ...[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there

---

1. On May 18, 2000, this court granted George E. Logue, Inc.'s motion, stipulated to by all parties, to dismiss it as a party in this matter. Therefore, this memorandum excludes discussion of the third-party complaint and various cross-claims filed both by and against it.

2. Unless otherwise specified, "plaintiff" refers to Jonathan Olin.

3. Wellco, Inc. was a predecessor of Welliver; the agreement discussed below between Ward and Welliver was originally entered into by Wellco, Inc. as Welliver's predecessor.

can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* at 393; *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* at 393 (quoting, *inter alia, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## II. STATEMENT OF FACTS

The facts underlying what occurred are, for the most part, not the subject of dispute. In 1995, Ward decided to construct a casting facility on its property located in Blossburg, Tioga County, Pennsylvania.[4] The casting facility included the construction of a large pre-engineered building on the site. It hired Larson Design Group (Larson), an engineering and architectural firm, to oversee and perform preliminary design and site analysis work for the project. Larson developed general specifications which were provided to prospective contractors interested in designing and constructing the project. Ward also retained Maxim Technologies, Inc. (Maxim) to complete a site analysis in order to analyze the adequacy of soil conditions in supporting the foundation of the casting facility and the equipment it would house.

On December 27, 1995, Ward entered into a written turn-key contract with Welliver.[5] Under the terms of the contract, Welliver, as general contractor, agreed to provide architectural, engineering and construction services, including labor, materials, equipment and supervision necessary for the design and construction of the casting facility.[6] Welliver also agreed to indemnify Ward for any and all claims for bodily injury and property damage arising

---

**4.** Ward is a Delaware corporation with its principal place of business located in Blossburg, Pennsylvania.

**5.** A "turn-key" project is one "in which all owner need do is 'turn the key' in the lock to open the building with nothing remaining to

be done and all risks to be assumed by contractor." Black's Law Dictionary 1055 (6th ed.1991).

**6.** Welliver is located in Elmira, New York.

out of the performance of the work identified in the contract.

Prior to construction, any information pertaining to the site and construction conditions secured or prepared by Larson, Ward, or Maxim were provided to Welliver. Welliver assumed control, possession and responsibility over the construction site throughout the project. Ward did, however, maintain an on-site representative to act as liaison and monitor the status of the project. Ward also had a safety representative on-site periodically to inspect the work site. Welliver hired Ward Excavating as a subcontractor for the construction of the facility.[7]

Plaintiff worked as a carpenter for Welliver. On September 30, 1996, plaintiff, while engaged in surveying activities on the Ward construction site, fell into an unbarricaded excavation pit allegedly covered with water and mud. As a result of the fall, plaintiff purportedly suffers severe injuries. Since the date of the accident, plaintiff has received total disability workers' compensation benefits from Welliver.

### III. WARD'S MOTION

█ Preliminarily, we note that a federal court sitting with diversity jurisdiction applies the law of the state whose law governs the action, *Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 85 F.3d 1088, 1091 (3d Cir.1996), which generally is the law of the forum state. *Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir.1993). Here, Pennsylvania law governs.

Defendant Ward requests that this court grant its motion for summary judgment for several reasons. It first contends that it is not liable to plaintiffs because it delivered possession and control of the construction site to Welliver under the terms of the turn-key contract for the purpose of completing the construction of the metal casting facility. Second, Ward submits that it is not responsible for plaintiff's injuries because the specific work under the contract did not involve an "unusual or peculiar risk of physical harm."

█ Plaintiffs argue that Ward, as both landowner of the construction site where plaintiff's alleged injuries occurred and employer of independent contractor Welliver, is liable under the "Peculiar Risk Doctrine" annunciated in sections 416 and 427 of the Restatement (Second) of Torts (1965). Sections 416 and 427 have been adopted as the law of the Commonwealth of Pennsylvania, *Philadelphia Elec. Co. v. James Julian, Inc.*, 425 Pa. 217, 228 A.2d 669, 671 (1967), and provide:

**§ 416. Work Dangerous in Absence of Special Precautions**

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

**§ 427. Negligence as to Danger Inherent in the Work**

One who employs an independent contractor to do work involving a special danger to other which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.[8]

---

7. Ward Excavating is a Pennsylvania corporation with its principal place of business located in Troy, Pennsylvania.

8. The phrases "peculiar risk" and "special danger" are used interchangeably. Restatement (Second) of Torts § 416 comment a (1965); *Ortiz v. Ra-El Dev. Corp.*, 365 Pa.Su-

## 1. PROPERTY OWNER'S IMMUNITY FOR TEMPORARY TRANSFER OF CONTROL

■ As a general and well-established Pennsylvania rule, a landowner who temporarily delivers possession and control of its land to an independent contractor is not liable to persons injured through the negligence of that independent contractor. *Zinn v. Gichner Sys. Group*, 880 F.Supp. 311, 313 (M.D.Pa.1995) (citing *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963); *Mentzer v. Ognibene*, 408 Pa.Super. 578, 597 A.2d 604 (1991); *Ortiz v. Ra–El Dev. Corp.*, 365 Pa.Super. 48, 528 A.2d 1355 (1987)). Notably, however, there are two limited exceptions to this general rule. *Zinn*, 880 F.Supp. at 313.

■ First, a landowner or employer of an independent contractor may be held liable where the owner "retains significant control" over the work delegated to the independent contractor. *Id.* (quoting *Lorah v. Luppold Roofing Co., Inc.*, 424 Pa.Super. 439, 622 A.2d 1383, 1384 (1993)). Second, a landowner may be liable under the "Peculiar Risk Doctrine" in §§ 416 and 427 of the Restatement (Second) of Torts set forth above. *Zinn*, 880 F.Supp. at 313. In the instant case, we find that neither exception is applicable as against Ward.

■ We agree with Ward that it did not "retain significant control" over the work delegated to Welliver and its subcontractor Ward Excavating to be independently liable for plaintiff's injuries under the first exception to a landowner's general grant of immunity.[9] *See Emery v. Leavesly McCollum*, 725 A.2d 807, 813–14 (Pa.Super.1999); *Lorah*, 622 A.2d at 1384. Al-

though the record reflects that Ward did maintain an on-site representative to act as liaison between Ward and Welliver, as well as a safety representative to inspect periodically the work site, N.T. 2/25/00 (deposition of Edward W. Kennelly at 7, 36 (Statement of Undisputed Facts in Support of Third–Party Defendant Welliver McGuire's Motion for Summary Judgment, Exhibit C)), we do not find such level of involvement to constitute significant control over the work and/or premises. *See Emery*, 725 A.2d at 814 (stating property owner's site manager "did not assume control of the premises or of the work ... he acted as a liaison between the owner and the contractor;" site manager's presence did not rise to level of control necessary to impose liability on owner).

> Frequent visits by employees of the owner to the job site merely evidence the normal desire of an owner to observe the progress of the work and to ascertain that the contractor is doing its work in accordance with the contract and "in no way" indicate that the owner retained control over the contractor's work.

*Id.* at 813 (quoting *Hader*, 189 A.2d at 278).

Furthermore, the very nature of the turn-key contract between Ward and Welliver indicates the transfer of possession and control of the project by Ward to Welliver. " 'An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract, and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over

per. 48, 528 A.2d 1355, 1357 n. 2 (1987) (holding corporation that contracted with independent contractor not liable to subcontractor's employee; plaintiff was unable to establish that peculiar risk or special danger caused injury).

9. Nowhere in their Brief in Opposition to Welliver and Ward Mfg. Motions for Summary Judgment do plaintiffs contest the issue

of Ward's lack of control over the construction project at issue. Indeed, in their Statement of Material Facts Responding to the Motion of Third–Party Defendant Welliver–McGuire, plaintiffs admit that Welliver had possession and control of the construction site upon which plaintiff worked. The crux of plaintiffs' argument hinges on the "peculiar risk" exception to a landowner's nonliability.

the work or the premises.'" *Motter v. Meadows Ltd. Partnership,* 451 Pa.Super. 520, 680 A.2d 887, 890 (1996) (quoting *Mentzer,* 597 A.2d at 610). Accordingly, as stated above, the first exception to a landowner's nonliability does not apply.

## 2. PECULIAR RISK DOCTRINE

■ As stated previously, we also find inapplicable the "Peculiar Risk Doctrine," the second exception to a property owner's nonliability. Plaintiffs submit that the conditions of the construction site where plaintiff's alleged injuries occurred created a peculiar risk of harm. Specifically, plaintiffs claim that "normal fall rains" created "abnormally high" levels of groundwater and mud on the construction site, thereby "masking" excavations and making "solid ground and excavations ... indistinguishable." Plaintiffs' Brief in Opposition to Welliver and Ward Mfg. Motions for Summary Judgment at 7. Additionally, plaintiffs assert that a peculiar risk of harm was created by the fact that the pit into which plaintiff fell was unmarked and unbarricaded. *Id.* at 7–8.

■ The determination of whether a peculiar risk exists is twofold. *Emery,* 725 A.2d at 814; *Ortiz,* 528 A.2d at 1358. Specifically, a peculiar risk exists where:

(1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, i.e., a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measures; and (2) the risk is different from the usual and ordinary risk associated with the general type of work done, i.e., the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary.

*Ortiz,* 528 A.2d at 1358. In this case, we need only consider the second prong of the test. This prong, in turn, also has a two-part analysis. First, it is necessary for the court to "examine the risk that would be posed by the general type of work to be performed under typical circumstances." *Id.* Here, the general type of work to be performed is surveying work on a construction site. We do not find this work to be particularly dangerous in and of itself. Second, we must examine "whether the circumstances under which the general work is done, i.e. the specific project or task, introduces a different kind or level of risk." *Id.* Again, as further detailed below, we find that performing surveying activities on a muddy construction site does not present a kind of risk that is substantially different from the tasks posed by general construction work.

The determination of "whether the risk is 'peculiar' for the purposes of sections 416 and 427 is a legal determination." *Motter,* 680 A.2d at 887. Further, "whether a peculiar risk exists is a matter for the court to decide before submission to the jury." *Lorah,* 622 A.2d at 1386. The "Peculiar Risk Doctrine" is an exception to the general rule of landowner nonliability and should be construed narrowly. *Motter,* 680 A.2d at 891.

We do not agree with plaintiffs' contentions that high levels of groundwater conditions on Ward's property made the construction project unusually dangerous. In support of their argument, plaintiffs cite to a geotechnical evaluation completed by Maxim which reports "[i]n well B–101, the static water level was determined to be several feet *above* ground surface ...." However, plaintiff's own employer, Welliver, reported that "almost all construction sites become muddy and/or wet following heavy rains, and this construction site was not unusual in that respect." N.T. 9/30/00 (affidavit of Stephen D. Campbell (Appendix in Support of Defendant Ward Manufacturing, Inc.'s Motion for Summary Judgment)).[10] In his deposition, plaintiff

---

**10.** There had been substantial rain in the days and weeks prior to plaintiff's fall. N.T.

2/25/00 (deposition of Jonathon Olin at 28 (Statement of Undisputed Facts in Support of

reveals that it was "not unusual for us to be working in water, water and mud." N.T. 2/25/00 (deposition of Jonathon Olin at 65 (Statement of Undisputed Facts in Support of Third–Party Defendant Welliver McGuire's Motion for Summary Judgment, Exhibit E)). Hence, we find that the conditions presented by the Ward construction site were not so substantially out-of-the-ordinary to create a peculiar risk of harm. "[A]ll construction work involves a risk of some harm; only where the work is done under unusually dangerous circumstances does it involve a 'special danger' or peculiar risk.'" *Ortiz,* 528 A.2d at 1359.

Plaintiffs further assert that the unbarricaded—allegedly four foot—pit into which plaintiff fell created a peculiar risk of harm. OSHA has safety standards requiring that excavations with a depth of six feet or greater be barricaded. Additionally, plaintiffs' expert reported that:

> It should be noted that accepted common practice for open excavations that are left unattended is to barricade them with special consideration at the 4 foot or deeper level. While construction Fall Protection Standards reference a 6 foot level, General Industry Standards utilize a 4 foot fall exposure as a height to be protected and best management practice to prevent injuries and accidents is to protect, depending on situations and conditions, even at heights less than 4 feet.

N.T. 3/31/00 (Statement of Opinion of John P. Coniglio at 12 (Exhibit to Plaintiffs' Brief)). The OSHA regulation and the comment by plaintiffs' expert support Ward's assertion that falling into an excavation on a construction site is an ordinary risk of harm associated with the type of work to be performed. In this case, the record reflects that it was the duty of Welliver or its subcontractor, Ward Excavating, to mark or barricade open excavations. N.T. 3/30/00 (deposition of L. Gene Ward at 25 (Exhibit to Plaintiffs' Brief)). Therefore, we hold that it was not the task of surveying on a muddy construction site that was peculiarly dangerous. Instead, it was the failure of Welliver and/or Ward Excavating to barricade excavations that increased the risk of a fall. Accordingly, Ward cannot be held liable for the possible negligence of Welliver and/or Ward Excavating. *See Motter,* 680 A.2d at 893.

Overall, plaintiffs have failed to establish that the risk complained of was in any way different from the usual and ordinary risk associated with the general type of construction work done, or that the task involved substantially unusual circumstances that made the work especially dangerous. We find that Ward cannot be held liable for plaintiff's injuries. Accordingly, we will grant Ward's motion for summary judgment.

### WELLIVER'S MOTION

The only claim against Welliver was filed by Ward. As stated above, we will grant Ward's motion for summary judgment. Accordingly, the derivative action against Welliver fails as a matter of law and we will grant Welliver's motion for summary judgment without reaching its merits.[11]

### WARD EXCAVATING'S MOTION

■ Ward Excavating requests that this court grant its motion for summary judgment on the ground that plaintiffs' amended complaint was filed after the expiration of the applicable statute of limitations. The statute of limitations is governed by Pennsylvania law that provides for a two-year statute of limitations for a personal injury cause of action. 42 Pa. Cons.Stat. Ann. § 5524(2). Plaintiff's alleged injuries were sustained on September 30, 1996.

Third–Party Defendant Welliver McGuire's Motion for Summary Judgment, Exhibit E)).

11. A grant of summary judgment in favor of Welliver also eliminates its derivative claim against Ward Excavating; therefore, it is unnecessary for us to discuss that claim.

The applicable statute of limitations thus expired on September 30, 1998. Plaintiffs filed their amended complaint naming Ward Excavating as an original defendant on November 2, 1998, after the expiration of the two-year statute of limitations. Plaintiff contends that the statute of limitations does not bar the complaint because the claim against Ward Excavating relates back to the original complaint under Fed. R.Civ.P. 15(c).

Fed.R.Civ.P. 15(c) provides:

Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

In this case, plaintiffs amended their complaint to add a new defendant, not a new claim. As noted by the court in *Childs v. City of Philadelphia*, No. 99–615, 2000 WL 567240, at *2 (E.D.Pa. May 9, 2000), a plaintiff amending a complaint to add a new party must meet the requirements set forth in Rules 15(c)(1) or 15(c)(3). "Rule 15(c)(1) is inapplicable because Pennsylvania law does not permit a plaintiff to 'add a new party after the expiration of the applicable statute of limi-

tations.'" *Id.* (quoting *Zercher v. Coca–Cola USA*, 438 Pa.Super. 142, 651 A.2d 1133, 1134 (1994)). Additionally, plaintiffs here cannot succeed under Rule 15(c)(2) alone because it "requires that the added new claims (not parties) arise out of the occurrence originally pled." *Childs*, No. 99–615, 2000 WL 567240, at *2. Accordingly, we must consider whether plaintiffs' amended complaint relates back under Rule 15(c)(3).

In order for plaintiffs' amended complaint against Ward Excavating to relate back to the original complaint under Fed. R.Civ.P. 15(c)(3), plaintiffs must meet the requirements of Fed.R.Civ.P. 15(c)(2) and subparts (c)(3)(A) and (c)(3)(B). In the instant case, plaintiffs satisfy Rule 15(c)(2), as the claim asserted against Ward Excavating in the amended complaint arose out of the same occurrence set forth in the original complaint, i.e., plaintiff's fall on September 30, 1996 into an excavation pit. Plaintiffs also satisfy subpart (c)(3)(A) pertaining to notice. Specifically, Fed. R.Civ.P. 4(m) requires service upon a defendant "within 120 days after the filing of the complaint." Here, Ward Excavating was served with the amended complaint on December 16, 1998, within 120 days of the filing of the original complaint on September 18, 1998. As to subpart (c)(3)(B), however, plaintiffs' argument fails since they are unable to satisfy their burden of proof as to the mistake requirement. *Childs*, No. 99–615, 2000 WL 567240, at *3 ("It is the plaintiff who bears the burden of proof for the requirements of Fed.R.Civ.P. 15(c)(3).").

Under Fed.R.Civ.P. 15(c)(3)(B), we must determine whether Ward Excavating knew or should have known within the 120–day period set forth in Rule 4(m) that "but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Plaintiffs have not asserted that the requirements of subpart 15(c)(3)(B) have been met. Indeed, there is no factual basis from which

to infer that Ward Excavating knew or should have known that an action would have be brought against it but for a mistake concerning its identity. Rather, it appears plaintiffs' failure to include Ward Excavating in their original complaint was due to their lack of knowledge of the proper party.[12]

> [A]mendment with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued. But a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.

*Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993) (quoting *Wood v. Worachek*, 618 F.2d 1225 (7th Cir.1980)). Accordingly, because plaintiffs have not established that Ward Excavating knew or had reason to know within the 120–day time period that the action would have been brought against it but for a mistake concerning its identity, the amended complaint does not relate back. Therefore, we will grant Ward Excavating's motion for summary judgment.

An order consistent with this memorandum will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendant Ward Manufacturing, Inc.'s motion for summary judgment (record document no. 41, filed April 17, 2000) is granted.

2. Defendant E.A. Ward Excavating, Inc.'s motion for summary judgment (record document no. 36, filed April 17, 2000) is granted.

---

12. The record supports some initial confusion as to whether it was George E. Logue or Ward Excavating that dug the excavation pit into which plaintiff fell. N.T. 3/30/00 (deposi-

3. Third-party defendant Welliver–McGuire, Inc.'s motion for summary judgment (record document no. 38, filed April 17, 2000) is granted.

4. Final judgment is entered in favor of defendants and against plaintiff.

5. The clerk is directed to close the case file.

tion of Richard Douglas Dean at 27 (Statement of Undisputed Facts in Support of Third–Party Defendant Welliver–McGuire's Motion for Summary Judgment)).