## Philadelphia Tax Review Board *v.* Manheim Laundry Company, Appellant.

Argued November 19, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*Alfred J. McDowell,* with him *Ronald Souser,* for appellant.

*Alan Miles Ruben,* Deputy to the City Solicitor, with him *Leonard B. Rosenthal,* Assistant City Solicitor, and *David Berger,* City Solicitor, for appellee.

Opinion by Mr. Justice Musmanno, January 18, 1960:

Manheim Laundry Company appeals from an assessment of mercantile license tax by the City of Philadelphia for the years 1953-56 on gross receipts collected from Manheim's customers living beyond the borders of Philadelphia. Manheim conducts a family service laundry, its sole plant being located within the City of Philadelphia where the laundry work is accomplished. It employs route salesmen who pick up the soiled laundry at the homes of its customers and returns it after

the cleansing operation has been completed. If a customer lives outside the City of Philadelphia, the company's route salesman still goes to his home to gather up the laundry and eventually return it. Where the company performs pick-up and delivery services it charges 10% more than the amount paid by the customer who delivers his soiled laundry at the company's office and collects the clean laundry there later. Stated in another manner, Manheim allows a 10% discount to those who deliver and withdraw their laundry at its place of business.

In computing its mercantile license tax for the years 1953-56, Manheim excluded from its total gross receipts such sums as were collected from customers located beyond the confines of Philadelphia. The City tax authorities ruled this exclusion improper. Manheim appealed to the Tax Review Board, insisting on excluding from its gross receipts the sums collected from out-of-Philadelphia customers, or, in the alternative, that it be credited, as non-taxable, with that portion of its gross receipts which represented payment for the services rendered outside the City.

The Tax Review Board rejected both these contentions and Manheim appealed to the Court of Common Pleas No. 1 of Philadelphia County which held that Manheim was not entitled to exclude all moneys derived from its out-of-city business,[1] but that to the extent Manheim performed pick-up and delivery services beyond Philadelphia limits, the receipts attributable to such services were not taxable. The Court then remanded the case to the Tax Review Board to determine a reasonable formula of allocation as to the portion of the company's receipts attributable to the pick-up and delivery services outside Philadelphia.

---

[1] Manheim took an appeal from that decision, which is one of the appeals before us.

At the renewed hearing before the Tax Review Board, Manheim stated that approximately 23% of its gross receipts were realized from customers living beyond Philadelphia. The City argued against any allocation at all. The Board ruled that Manheim was entitled to a 10% exclusion on its out-of-town trade, this being the same 10% which represented the differentiation between the prices charged those whose laundry was picked up and delivered at their homes, and those who deposited and collected their laundry at the laundry office. Manheim appealed to the court of common pleas complaining that the Tax Review Board's allocation formula was arbitrary, unreasonable and capricious. The court of common pleas affirmed the Tax Review Board's decision and Manheim appealed.[2]

The City of Philadelphia took no appeal from the common pleas court's decision so that it cannot be heard to say, as it now attempts to say, that no portion of Manheim's receipts may be excluded in computing the mercantile tax. We thus limit our discussion to Manheim's position that (1) none of its gross receipts from out of city customers are taxable or (2) the allocation formula adopted by the Tax Review Board and affirmed by the court below is unreasonable, arbitrary and capricious.

Pressing its position that none of its gross receipts from out-of-town customers are taxable, Manheim contends that its activities outside Philadelphia amount to the making of sales of laundry service, which sales are initiated and consummated beyond Philadelphia, and therefore are not taxable under Philadelphia's Mercantile License Tax regulations. This argument has more ingeniousness than logic to support it. Manheim does not sell anything. It performs a service. Of

---

[2] There are thus two appeals here, appeals which had originally been filed in the Superior Court but later certified to this Court under the authority of *Bell Appeal*, 396 Pa. 592.

course, it does "sell" itself in the sense that it advertises and seeks out customers, but it delivers no new commodity. The shirt which it picks up dirty is the same shirt which it returns clean, different only because of a button or two it may have lost in the washer.

The argument made by Manheim was advanced by the taxpayer in *Department of Treasury of Indiana v. Ingram-Richardson Mfg. Co.*, 313 U. S. 252. In that case, the Ingram-Richardson Company in Indiana sent its representatives to places beyond the confines of Indiana to pick up stove and refrigerator parts, deliver them to its plant where the parts were enameled, and then returned them to the customers. When Indiana assessed as gross income the receipts collected from this business, Ingram-Richardson maintained that it was engaged in interstate commerce in that it was selling its product outside Indiana. The Supreme Court declined to accept this view and held that Ingram-Richardson was not making sales outside the State but rendering services in Indiana. Therefore, the receipts from such services were subject to the Indiana Gross Income Tax Law.

Practically the same situation repeats itself here. Manheim is performing services to goods already owned by its customers. If the rendering of laundry services could be held to constitute a sale, then almost every service could be so classified. Such a holding would be contrary to the long-established definition of a "sale," defined in Webster's New International Dictionary as: "A contract whereby the absolute or general ownership of property is transferred from one person to another for a price, or a sum of money, or, loosely, for any consideration. Also, a contract for such transfer of ownership in the future or upon the future fulfillment of some condition . . . The word *sale* is often specifically used of the sale of personal property, as usually in the phrase *the law of sales.*"

However, Manheim does perform a service beyond Philadelphia when it sends its route-salesmen beyond the city limits to pick up and deliver the laundry to those customers. In this respect the lower court correctly held that ". . . to the extent that pick-up and delivery are performed outside of the City, the receipts attributable thereto are attributable to a service actually performed outside the limits of the City of Philadelphia and should be excluded from the tax base." Accordingly, it properly remanded the case to the Tax Review Board "for the purpose of arriving at a formula of allocation: of those receipts attributable to pick-up and delivery service performed outside the City."

Now, the question remains: Was the allocation formula adopted by the Tax Review Board allowing an exclusion of 10% from gross receipts from out of City customers reasonable, or was it unreasonable, arbitrary and capricious as contended by appellant company which seeks a 22%-24% exclusion? A review of the record satisfies us that the court below was justified in adopting the opinion of the Tax Review Board which stated: "The mandate of the Court, as we read it compels us to adopt some allocation formula and the only matter now open for our decision is the choice of the particular formula which best accomplishes the allocation required by the Court's decision.

"Counsel for petitioner contends that we should approve the formula he has devised which is set forth in our supplementary finding of facts of June 3, 1957. This formula consists of a fraction the numerator of which is the cost of pick-up and delivery service (both within and without the City) and the denominator of which is petitioner's total operating costs. This fraction, applied to petitioner's receipts from laundry picked up and delivered outside the City, would yield exclusions for the years involved of approximately

twenty-two to twenty-four per cent (22%-24%). We do not adopt this formula for two reasons: (1) It is based entirely on cost and makes no allowance for the fact that petitioner's plant and thus apparently its property is located entirely, within the City. (2) Neither does it make allowance for fact that part of petitioner's service to extra city customers includes transportation between the city line and petitioner's plant, as well as loading and unloading at the plant, all of which takes place in the City.

"The Assistant City Solicitor argues that if a formula is used it should be something less than ten per cent (10%) but we do not find his argument convincing.

"Consequently, making allowance for the various considerations, and acting in compliance with the Court's mandate, we find the most reasonable allocation formula to be the differential which petitioner itself has fixed between the price charged for laundry picked up and delivered at the customer's home as compared with that delivered and called for by the customer at petitioner's plant."

Accordingly, the orders of the court below are affirmed; costs to be borne equally between the parties.