Amy S. BULLMAN, Appellant,

v.

James M. GIUNTOLI and Barbara Giuntoli, His Wife and Heinz C. Augustine Individually and d/b/a H.C.A. Construction, Appellees.

Superior Court of Pennsylvania.

Argued April 11, 2000.
Filed Sept. 25, 2000.
Reargument Denied Nov. 22, 2000.

William R. Caroselli, Pittsburgh, for appellant.

Lisa H. Kahn, Pittsburgh, for James Giuntoli, appellee.

Joseph E. Kubit, Butler, for Heinz Augustine, appellee.

BEFORE: JOHNSON, HUDOCK and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from an order granting Appellees' motion for summary judgment. Appellant raises one question for our review:

Whether the trial court erred in granting summary judgment on the basis of assumption of the risk where there existed a material issue of fact as to whether [Bullman], a visitor to a residential construction site, subjectively knew that a plank providing access would move, causing her to lose her balance, step onto and fall through boards, which appeared to be weight-bearing and a covered porch, into the basement and become a paraplegic?

We vacate and remand.

¶ 2 On February 1, 1996, Appellant (hereafter Bullman), along with her parents, visited the construction site of a new home which was being built for Appellees, James and Barbara Giuntoli (Giuntolis), who were friends of Bullman's parents, with the intention of viewing the unfinished home. As of that date the basic structure was in place, the house had been framed and a roof was in place. Around the perimeter of the house was an open excavation "ditch" approximately six to eight feet wide and eight to nine feet deep. The only apparent access to the interior of the unfinished home was provided by a wooden board or plank approximately twenty feet long and one foot wide. This board crossed the excavation ditch onto an unfinished porch area and into the main portion of the home. Underneath the house was a basement, which extended out to the porch. The porch was covered with insulation boards which had been placed there to retain heat and allow for the pouring of the basement floor.

¶ 3 Since Bullman had desired to see the interior of the unfinished home, she stepped onto the board and began crossing the board toward the entrance of the house. According to her deposition testimony, Bullman safely traversed the excavation ditch and was over the unfinished porch area when the board moved causing her to lose her balance. As Bullman was losing her balance she stepped onto the flooring of the porch in an effort to regain stability, but, as the porch was covered only with insulation board, which could not sustain her weight, she fell through the insulation board into the basement. As a result of the fall, Bullman sustained severe injury and is now a quadriplegic.

¶ 4 On August 12, 1997, Bullman filed a complaint against both the Giuntolis and Heinz C. Augustine, individually, and H.C.A. Construction (Augustine), alleging causes in negligence and seeking damages

for her personal injury. On September 11, 1998, Giuntolis filed a motion for summary judgment asserting that as Augustine Construction was an independent contractor the Giuntolis were not "in possession" of the property on the date the accident occurred and also asserting that Bullman had voluntarily assumed the risk of the injury sustained. The court granted the Giuntolis' motion on the basis of assumption of the risk and did not consider Giuntolis other basis for summary judgment relief. In order to facilitate an immediate appeal Bullman asked the court to amend its order to indicate that the ruling on assumption of the risk would preclude an action against Augustine. The court modified its order as requested and the present appeal followed.

¶ 5 When reviewing an appeal of a grant of summary judgment, we consider the following principles:

> [We] will only reverse the trial court's entry of summary judgment where the [trial court committed] an abuse of discretion or an error of law. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. . . . In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law.

*Sebelin v. Yamaha Motor Corp.*, 705 A.2d 904, 906 (Pa.Super.1998) (citations omitted).

¶ 6 This appeal asks us to once again revisit the matter of assumption of the risk, that is, a situation where a party voluntarily proceeds in the face of a known risk.[1] As can be readily seen from even a cursory research of this area of law, the doctrine of assumption of risk has been very problematic and has fallen from the favor of some of the judiciary and legal commentators.[2] In fact, the doctrine as a separate affirmative defense has only narrowly survived abolishment by our Supreme Court.[3] As this case attests, the doctrine is frequently misapplied. At times, trial courts, in reliance upon the doctrine, have incorrectly precluded cases from going to a jury, thus, precipitating

1. Under the Restatement of Torts there are four types of "assumption of the risk." Our discussion relates to the fourth type, voluntarily encountering, or proceeding in the face of, a known risk, as do the majority of cases discussed *infra*.

2. The reason the doctrine has caused many problems might be open to speculation, yet it seems that sometimes lost in the very technical and engrossing discussions regarding the assumption of the risk doctrine, its elements, the policies behind it, and its applicability or non-applicability to a given set of facts, is an overall appreciation that it is an affirmative defense only, and not an ultimate conclusion of fault or liability. When a party raises the defense of assumption of the risk, litigates the matter vigorously, and then loses the decision, it seems as if a feeling is created that the defendant has lost the liability war when, in fact, the war is just beginning and all that may have been lost is the first skirmish. Although it is hardly a hidden point, it is worth noting that a determination that assumption of the risk does not apply does not equate with a finding that the defendant is legally liable for the plaintiff's injury, it merely means that the plaintiff will not be prevented from presenting a fault based inquiry into the responsibility for the injury. If, despite the inapplicability of the doctrine, the plaintiff's negligence contributed to the sustaining of injury, the apportionment of responsibility will follow naturally under comparative negligence law and the defendant will be relieved of responsibility commensurately, if not altogether.

3. The Supreme Court, as evidenced by the lead opinions in the cases of *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993), and *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981), twice attempted to abolish the doctrine but came up short of the necessary votes to gain a clear majority.

reversals and remands. Moreover, in the day of comparative negligence, many believe the doctrine is outdated and serves little purpose.[4] Nevertheless, as the doctrine has not been formally abolished by our Supreme Court, we are obligated to apply the doctrine despite its less· than wholehearted support.

■ ¶ 7 Before attempting to define what assumption of the risk is, perhaps more might be accomplished by clarifying what assumption of the risk is not. If one thing is clear from a thorough review of assumption of the risk law it is that **a failure to apprehend a danger** that then occasions injury is negligence, not assumption of the risk. An apprehension of a danger, followed by a conscious decision to tempt fate and accept what fate may bring, which then occasions injury, while indeed constituting contributory negligence, is additionally assumption of the risk, and a complete bar to recovery. Hopefully the discussion that follows will demonstrate the above with convincing clarity.

¶ 8 In *Handschuh v. Albert Development*, 393 Pa.Super. 444, 574 A.2d 693 (1990), we stated:

> The essence of assumption of the risk defense is not an evaluation of fault or negligence in encountering a danger but an acknowledgement that the plaintiff **changed his position**. Before suffering injury "he intelligently acquiesced in a known danger and **abandoned his right to complain**, but afterwards, seeks to assert the claim he had waived." *Id.*, 463 A.2d at 1049.

Quoting *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983). (Emphasis added). This same sentiment was echoed in *Struble v. Valley Forge Military Academy*, 445 Pa.Super. 224, 665 A.2d 4 (1995), where we stated:

> a plaintiff will not be precluded from recovering except where it is beyond

question that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition **and thereby must be viewed as relieving the defendant of responsibility for his injuries.**

(Emphasis added).

In *Long v. Norriton Hydraulics, Inc.*, 443 Pa.Super. 532, 662 A.2d 1089, 1090 (1995), we termed the concept as one where the plaintiff, by his actions, **"absolved the defendant** from responsibility for the injuries sustained." (Emphasis added). The recent case of *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 529 (Pa.Super.2000)(*en banc*), incorporates both terms and states, "a plaintiff has assumed the risk where he has gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries."

■ ¶ 9 To borrow from another well-known legal concept, "assumption of the risk" is essentially a form of "estoppel" in a tort context. It might be assumed, for purposes of an assumption of the risk analysis, that the defendant(s) was negligent, and at least partly responsible for the injury sustained, nevertheless, given the circumstances in which the injury was sustained, the plaintiff is essentially "estopped" from pursuing an action against the defendant because it is fundamentally unfair to allow the plaintiff to shift the responsibility for the injury to the defendant when the risk was known, appreciated and voluntarily assumed by the plaintiff.

■ ¶ 10 The above principle, whether couched as abandoning a right to complain, or absolving/relieving a defendant of responsibility, or even estopping a plaintiff from recovering, cannot follow, however, unless the danger was known and fully appreciated. As related in the comments

---

**4.** Indeed, the Restatement (Second) of Torts terms this form of assumption of the risk as essentially "contributory negligence." Of course, contributory negligence as a separate

defense no longer exists in Pennsylvania after passage of the comparative negligence statute 42 Pa.C.S.A. § 7102.

to the Restatement (Second) of Torts, § 496 D:

  b. The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable.

  c. The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. (See §§ 464, 289 and 290.) If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation; he will not be taken to assume the risk, although it may still be found that his conduct is contributory negligence because it does not conform to the community standard of the reasonable man.

¶ 11 Given the above, it is not surprising then that the assumption of the risk doctrine has been applied in rather narrow fashion, particularly in more recent years, as it is quite a drastic measure to state that despite the very possible presence of negligence that at least contributed to a party's injuries, nonetheless, the plaintiff should be "estopped" or prevented from holding that party liable in court because the plaintiff's actions are such that they should be viewed as having abandoned any right to complain. Thus, in particular, the recent decisions reflect a reluctance to find assumption of the risk applicable unless it is quite clear that the **specific risk** that occasioned injury was both fully **appreciated** and voluntarily **accepted**.

¶ 12 In *Hardy v. Southland Corp.*, 435 Pa.Super. 237, 645 A.2d 839 (1994):

Appellant brought suit to recover damages for an injury sustained at a 7–Eleven store owned by appellees. According to appellant's testimony she entered appellees' store on a day it had been raining, stepped onto a floor mat located just inside the doorway and, on her first step off the mat, fell on the linoleum floor. Appellant admitted that she had glanced at the floor immediately prior to stepping onto it and noticed that it appeared wet. Based upon this admission the trial court concluded that appellant had "assumed the risk" of the injury she sustained and, therefore, was precluded from recovery.

In reviewing this decision we concluded that the court had erred in finding assumption of the risk under the facts presented there. We stated:

we do not believe appellant assumed a known risk under circumstances that indicates an abandonment of a right to complain. The "preliminary conduct" of walking into the store is not such that should be regarded as accompanied with assuming the risk of a fall on a slippery floor. Appellant did not become aware of the "known danger" until just before she took the step which caused her injury. Indeed, in order to avoid the danger it might have been necessary for her to stop herself in mid-stride. In our opinion these are not circumstances to which the doctrine should apply as an affirmative defense. Rather, these circumstances invite comparison of negligence under applicable law.

¶ 13 We reached a similar conclusion in the aforementioned case of *Struble v. Valley Forge Military Academy*, 445 Pa.Super. 224, 665 A.2d 4 (1995). There, a student of the Academy was injured when a ceremonial/"toy" cannon, which was loaded with "blanks only," discharged while the student was located in front of, and slightly to the side of, the cannon's mouth causing injury to the student's leg. The cannon discharged when the student attempted to loosen the lanyard after it be-

came stuck between the wheel and body of the cannon. The trial court refused to charge the jury on the doctrine of assumption of the risk prompting the Academy's appeal when the jury found for the student in a negligence action.

¶ 14 Although the student indicated that he was aware that he should not stand in front of the cannon while it was being discharged, and even though the student caused the cannon to discharge when he pulled on the lanyard while attempting to dislodge it, we concluded that the case did not support an assumption of the risk defense. In reaching this conclusion, we focused upon the fact that the student had indicated that he was unaware that the cannon, being loaded with blanks, could cause the type of injury sustained and also that the cannon had always required considerably more pressure upon the lanyard to discharge it than the student had applied that day. Thus, given the above-quoted standard, it is clear that the panel did not believe that the student's actions amounted to a voluntary assumption of risk under circumstances that "relieved the defendant of responsibility for the injuries sustained."

■ ¶ 15 Similarly, in *Barrett v. Fredavid Builders, Inc.*, 454 Pa.Super. 162, 685 A.2d 129 (1996), we reversed the finding of assumption of the risk where an insulation installer, working on two foot stilts, slipped and fell on a discarded piece of siding. Central to our decision was the fact that the plaintiff did not see the specific piece of vinyl siding which he stepped on and caused him to fall. Indeed, *Barrett* provides a useful lesson. The mere fact one engages in activity that has some inherent danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained. Mr. Barrett clearly had an appreciation of a certain amount of risk in the venture. Working on stilts certainly is more dangerous than working while standing on firm ground. Additionally, he had taken time to clear a path where he would be working from

debris in order to prevent an accident. However, the appreciation of a general risk was not sufficient to prevent the case from going to the jury. Instead, that appreciation required a weighing of fault under comparative negligence principles. Had Barrett glanced down and seen the vinyl siding and then chose to proceed despite its presence then experienced the fall, the case may very well have implicated assumption of the risk.

¶ 16 Similarly, in *Long v. Norriton Hydraulics, Inc.*, 443 Pa.Super. 532, 662 A.2d 1089 (1995), we reversed an order granting summary judgment in favor of several defendants on the basis of assumption of the risk. There a worker was injured when he slipped on hydraulic fluid and fell while trying to avoid being struck by a hydraulic lift that suddenly shifted downward toward him. The evidence cited to support the granting of summary judgment included the fact that the hydraulic lifts had "shifted" "quite a few times" and also that the lifts had been leaking hydraulic fluid for some time and that the appellant was aware of both of these facts. The panel's decision reflects a belief that this evidence did not establish the essential elements of the assumption of the risk doctrine, namely that the risk of injury from the transaction that actually took place was so immediately apparent as to be equivalent to an appreciation and acceptance of that risk and a relinquishment of the right to complain.

¶ 17 A similar result was reached in the aforementioned *Handschuh v. Albert Development*, 393 Pa.Super. 444, 574 A.2d 693 (1990). In *Handschuh* we found that the court had properly denied a request to instruct the jury on the theory of assumption of the risk in an action involving the death of a plumbing contractor who sustained injuries when a trench in which he was laying pipe collapsed. Mr. Handschuh was aware of the general risk of ditch collapses and it had even been believed that this particular job would be "delicate." As a safety precaution Mr. Handschuh had

a lookout on duty to shout a warning if any evidence of a collapse was presented. The fatal injury resulted when a seam developed in the trench. The lookout shouted a warning and Mr. Handschuh responded by retreating up the trench but he did not exit the trench. After hesitating a moment, Mr. Handschuh turned again when the bulk of the dirt hit him, causing him to sustain fatal injuries. We stated that although the job contained a definite element of risk that was appreciated, the risk was not so imminent as to constitute a waiver of the right to complain. Thus, application of assumption of the risk was not implicated.

¶ 18 After reviewing the above decisions it should be clear that to grant summary judgment on the basis of assumption of the risk it must first be concluded, as a matter of law, that the party consciously appreciated the risk that attended a certain endeavor, assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk involved, and that the injury sustained was, in fact, the same risk of injury that was appreciated and assumed. This last factor, although certainly a logical component of the assumption of the risk doctrine, also appears to be a stumbling block in assumption of the risk analysis. Even if it is assumed that there is an assumption of the risk component to one's actions, it does not necessarily follow that any type of injury suffered in that endeavor becomes immune from suit. Logically speaking, the injury sustained must be the result of the same risk appreciated and assumed.

¶ 19 To illustrate this point, consider a frequently cited example of assumption of the risk: when one attends a baseball or hockey game one is presumed to assume the risk that he might be hit by a baseball or a puck. Nevertheless, if one is struck by a baseball intentionally thrown into the stands, or a puck intentionally shot into the seats, one cannot be deemed to have assumed that risk. Similarly, one who engages in skiing might be thought of as

assuming the risk of falling or colliding with something. Yet, if a ski trail suddenly, and without warning, falls off causing one to fall and injure oneself, or if one collides with heavy machinery left in a skiing area, one cannot be thought of as having assumed that risk and the ski area operator should not be insulated from liability for the injury merely because the skier engaged in an activity that has inherent or attendant risks.

¶ 20 With the above as prologue, we undertake an analysis of the facts of the present case. As related above, here Bullman desired to observe firsthand the progress of the construction of an acquaintance's home. Upon arrival at the work site, the only apparent method of ingress was over a plank approximately one foot wide. The plank crossed over an open ditch of six to eight feet and continued crossing over a porch area that appeared to Bullman to be roughly finished and covered with wood. Bullman successfully crossed the excavation ditch but began to lose her balance as the plank moved while she was over the porch area. In an effort to regain her balance she placed her foot on the material covering the porch but fell through the insulation board and sustained injury.

¶ 21 In the case at bar, it could certainly be argued that Bullman indeed assumed the risk that she might naturally lose her balance while traversing the plank and fall into the excavation ditch. The excavation ditch was open and obvious and the peril of crossing a one-foot wide plank is well understood by virtually all individuals of adult age. Nevertheless, since Bullman did not fall into the excavation ditch, we do not find the above premise controlling.

¶ 22 As just stated, from Bullman's perspective the obvious hazard was the excavation ditch that lie before her and which required her traversal to gain entry into the home. However, her testimony indicated that she had no appreciation of a risk of falling through what proved to be

insulation board covering the porch. Her testimony indicated that she observed the porch area to be covered with what she thought was wood.[5] Thus, considering the knowledge in her possession, Bullman could only be found to have assumed the risk of falling into the excavation ditch. Once she safely traversed that section, the risk she had assumed had ended. Despite the fact that obviously there were other perils still around her, they were not fully appreciated, thus, they could not be voluntarily assumed.[6]

¶ 23 In short, under the uncontradicted facts of record, it cannot be said that Bullman "assumed the risk" of sustaining the injury she actually sustained. The mere fact that she assumed a certain risk in crossing the board into the house cannot be used to immunize the Appellees from liability for any injury that she may have had the misfortune of sustaining and to which their negligence may have, in fact, contributed. Since assumption of the risk requires a subjective appreciation of risk, Bullman could not have assumed the risk that she did not ascertain, even if the injury actually sustained is similar to the risk assumed. Thus, the granting of summary judgment on the basis of the assumption of the risk doctrine was in error.

■ ¶ 24 Perhaps anticipating the possibility of the above result, Appellees Giun-

tolis argue that the grant of summary judgment should be affirmed nevertheless on the other ground they had raised in the motion for summary judgment, namely, that they were "out of possession" of the property during the construction of the home. Although, in light of its conclusion on assumption of the risk, the trial court did not address this issue, Appellees correctly assert that we are empowered to affirm the trial court on any basis if the decision is correct. *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94, 96 n. 5 (1974).[7] Thus, we feel compelled to review and assess the Giuntolis' argument.

■ ¶ 25 Our Concurring and Dissenting colleague disagrees with this position and sets forth a spirited multi-part argument to support his belief that we should not address Appellee's assertion. The Dissent first argues that the Giuntolis are precluded from "raising" this argument because they did not file a cross-appeal. However, the Dissent fails to acknowledge that since the Giuntolis were granted summary judgment below, they were not "aggrieved" by the order under consideration and, thus, were not entitled to cross-appeal. *See Smith v. Grab*, 705 A.2d 894 (Pa.Super.1997)(quashing cross-appeal as cross-appellant not aggrieved by the order appealed from). *In accord, In Re Miller*

---

**5.** Bullman's Deposition, at pp. 35 and 129. We note that although Bullman's reproduced record contains page 35 of her deposition, which sets forth the above referenced testimony, it was not contained in the material appended to her brief in opposition to the Giuntolis' motion for summary judgment, at least not in the record that was forwarded to us. Despite this absence Bullman's brief indicates that it is so appended. Consequently, it is unclear whether or not this page of the deposition was presented to the trial court or not. Nevertheless, the same fact is touched upon on page 129 of the deposition, which was appended to the Giuntolis' brief in support of their motion for summary judgment. Consequently, this testimony is of record and was before the trial court.

**6.** In accord is part of the Commentary to the Restatement (Second) of Torts, Comment b.

to § 496, quoted previously: "Thus the condition of premises upon which he enters may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or, if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or to understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence."

**7.** *See also, Boyer v. Walker*, 714 A.2d 458 (Pa.Super.1998), *Fennell v. Nationwide Mut. Fire Ins.*, 412 Pa.Super. 534, 603 A.2d 1064 (1992) and *Gutman v. Giordano*, 384 Pa.Super. 78, 557 A.2d 782 (1989), all of which involve summary judgment cases.

*& Son Paving Inc.*, 161 Pa.Cmwlth. 138, 636 A.2d 274 (1993). Thus, had they attempted to cross-appeal, as the Dissent suggests they were obligated to do, their cross-appeal would have been subject to quashal. Moreover, a review of the many authorities cited in defense of the Dissent's proposition reveals that, unlike the Giuntolis here, the parties in those cases were aggrieved, at least in part, if not wholly, by the order under consideration. Thus, their failure to file a cross-appeal prevented them from seeking **relief** from this court. In contrast, Giuntolis are not seeking relief from this court. Rather, they argue for affirmance of the order granting summary judgment, even if it requires reliance upon a theory different from that relied upon by the trial court.[8]

¶ 26 Next the Dissent acknowledges that there exist cases where the grant of summary judgment was affirmed on grounds not relied upon by the trial court but asserts, "I am unaware of any cases where this Court or our Supreme Court undertook to consider an issue not addressed by the trial court in reversing the trial court order." Concurring and Dissenting Opinion, at p. 581. By this passage the Dissent evidences a failure to recognize that, from a logical standpoint, the process is essentially the same regardless of whether the eventual result is affirmance or reversal, or alternatively, proposes an approach that ignores the important interests of judicial economy.[9]

¶ 27 Logically speaking, an appellate Court cannot "affirm on other grounds" unless those grounds are first considered, are found to independently support the decision below and are then set forth in the court's opinion as a basis for affirmance. Thus, in every case where an appellate court "affirmed on other grounds," a decision was made not to af-

---

8. Moreover, since the trial court made no ruling on the issue in question, there was no "error" for the Giuntolis to assert in a cross-appeal as to this particular issue. Thus, it cannot be argued that the Giuntolis were even partly aggrieved by the trial court's order.

9. The Dissent's posture, in general, seemingly fails to recognize that, as a reviewing court, we review decisions of the trial court and not simply the reasons for those decisions. As was aptly described over one hundred years ago by the California Supreme Court:

It does not appear that this specific objection was suggested at the trial, but the objection there made, and the ruling had, would seem to have proceeded upon a different theory from that upon which respondent now rests. But, unfortunately for appellant, this fact of itself constitutes no sufficient ground for reversing the ruling of the court. The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.

Thus, in *Chabot v. Tucker*, 39 Cal. 434, it is said by Mr. Justice Temple for the court: "The proper subjects of review in this court are the rulings and decisions of the district court, but not the reasons given for such rulings. The fact that the statute requires the judge to state in writing the grounds upon which the motion was granted or denied does not make it incumbent on the prevailing party to defend the logic of the judge. It is enough if the decision be correct." And again, by the same learned judge, in *In re Kingsley*, 93 Cal. 576, 577 [29 P. 244]: "With the process of reasoning by which the court reached its conclusion we have nothing to do. That may have been erroneous and the ruling correct. To justify a reversal, it is incumbent upon the appellant to show an erroneous ruling, and not merely bad reasoning or mistaken views of the law."

In other words, it is judicial action, and not judicial reasoning or argument, which is the subject of review; and, if the former be correct, we are not concerned with the faults of the latter.

*Davey v. Southern Pacific Company*, 116 Cal. 325, 48 P. 117 (1897). For a discussion in accord, and citation to numerous cases, see 5 C.J.S. § 714–15.

firm on the grounds set forth by the trial court,[10] followed by a consideration of "other grounds" and a conclusion that "other grounds" existed to support affirmance of the decision in question. This process is precisely what we are undertaking in the present case. Having found the grounds relied upon by the trial court to be erroneous, we now undertake to see if there are other grounds that require the affirmance of the grant of summary judgment. The significant difference being that, in contrast to the previously referenced cases, where the appellate court found other grounds upon which to affirm, we have not.[11]

¶ 28 The Dissent seems to suggest that we are empowered to consider grounds other than those considered by the trial court, but only in affirmance. However, unless the court is predisposed to affirmance, we cannot conclude whether or not affirmance is proper until review of the "other grounds" takes place. Only after a review of "other grounds" takes place will the appellate court be in a position to determine whether the proper course of action is affirmance or reversal. If no other grounds are found to support affirmance, reversal is the only, and proper, action.

¶ 29 Moreover, adherence to both the above principle and the posture of the Dissent would require the odd circumstance where, if we conclude that there are other grounds upon which to affirm, we proceed to do so and set forth that analysis in our opinion. However, if, on the other hand, the "other grounds" argued are found not to support affirmance, we remain silent as to those theories, even though a full review of the merits may have occurred in chambers. The irony in this scenario is that, as hinted at by the Dissent, the party who prevailed below, only to face reversal, may subsequently seek summary judgment upon the alternate grounds not previously relied upon and which went unaddressed by the appellate court. This could then invite another appeal and, possibly, a second reversal, thereby occasioning an unnecessary delay and a wasting of judicial resources, all after a full review of the "other grounds" had been undertaken by the appellate court in the first appeal.[12]

¶ 30 Moreover, and despite the Dissent's argument to the contrary, in *Gutman v. Giordano*, 384 Pa.Super. 78, 557 A.2d 782 (1989), the panel indeed addressed "other grounds" yet found reversal to be proper. In *Gutman*, the trial court granted summary judgment in reliance upon *res judicata*. *Id.*, 557 A.2d at 783. After recognizing this, the panel, in the next paragraph, states "[c]uriously, neither party on appeal had addressed the application of this doctrine to the present case. Our view, nevertheless is that *res judicata* does not apply...." *Id.* After concluding that the granting of summary judgment on the grounds of *res judicata*

10. From a practical standpoint, it can be assumed that appellate courts are not frequently affirming "on other grounds" where the grounds relied upon by the trial court are sufficient. Rather, the practice is generally undertaken when the trial court's reasoning is erroneous or fatally flawed or where a ruling was made on an issue of constitutionality where other grounds would have sufficed.

11. As our review, *infra*, reveals, Giuntolis are not entitled to summary judgment upon either of the grounds they asserted below.

12. The reason for this principle of appellate review should be rather evident. If the appellate court were not entitled to look to issues other than those specifically addressed by the trial court then, ostensibly, many of the cases where appellate courts have indeed affirmed on other grounds would have been needlessly reversed despite the existence of a sound basis for affirmance, since the appellate court had concluded that the trial court's reasoning was in error. However, due to the principle in question, many decisions have been affirmed despite error in the trial court's reasoning. Of course, this is a sound exercise of scarce judicial resources, as there is no sound reason to reverse a decision that has a sound legal basis for it merely because the trial court arrived at the decision by an erroneous theory or application of law.

was error, the court states, "[a]ccordingly, we examine the arguments on appeal." *Id.* The court then points out that it is empowered to affirm on other grounds, as if to utilize this principle as the reason for addressing the arguments on appeal. Ultimately, after considering the arguments pursued by the parties, and after concluding that the argument advanced by appellee in support of the granting of summary judgment lacked merit, the panel reversed, as we do today.

¶ 31 Because the panel recited the principle in question, we can safely assume that had the panel found the appellee's position meritorious, it would have affirmed on that ground. Also, given the context in which the panel recites the principle of affirmance upon "other grounds," it can be assumed they believed this principle required them to address the arguments raised by the parties despite the fact that they did not address the grounds relied upon by the trial court in granting summary judgment. Thus, despite the insistence of our Concurring and Dissenting colleague to the contrary, we feel that we are obligated to review the additional matter raised by the Giuntolis.

¶ 32 Turning to the alternative argument advanced by the Giuntiolis, they assert that they were entitled to summary judgment because, as employers of an independent contractor, they were not in possession of the land and could not be held liable for injuries resulting from work performed thereon. Relying on *Brletich v. United States Steel Corporation*, 445 Pa. 525, 285 A.2d 133, 135 (1971), and *Motter v. Meadows Limited Partnership*, 451 Pa.Super. 520, 680 A.2d 887 (1996), the Giuntolis correctly state, "when a [landowner] turns the work over to an independent contractor with experience and know-how, who selects his own equipment and employees, the possessor of land has no further liability in connection with the

work to be done."[13] Appellant's Brief at 18.

¶ 33 In response, both Bullman and Augustine assert in the briefs in opposition to the motion for summary judgment[14] that the question of whether the Giuntolis were in possession and control of the property where the house was being constructed on February 1, 1996 is a matter for the jury's determination. Of course, given our conclusion above, we can affirm the order granting summary judgment only if Giuntolis were entitled to summary judgment on the possession issue. This would require a conclusion that there are no material facts for resolution and that the Giuntolis are entitled to judgment as a matter of law. The above, in turn, would require an assessment that all facts relevant to the determination have been developed and that no reasonable jury could conclude to the contrary. *See Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998). Reviewing the record in light of this standard, we do not think we can reach this conclusion. Thus, we conclude that Giuntolis were not entitled to summary judgment on this ground.

¶ 34 Although Giuntolis correctly assert that a landowner who turns over work on his/her property to an independent contractor has no further liability in connection with the work, § 414 of the Restatement (Second) of Torts (1965), further provides:

> One who entrusts the work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414.

■■■ ¶ 35 A review of the record reveals that Mr. Giuntoli was taking a far

---

**13.** This basic premise can be found at section 409 of the Restatement (Second) of Torts.

**14.** Neither Bullman nor Augustine chose to address the merits of this challenge in their

reply briefs, choosing instead to argue, fruitlessly, as it turns out, that we should not consider the issue.

more than passive role in overseeing the construction of the house. Mr. Giuntoli visited the construction site on a daily basis and frequently stopped by in the morning and evening. Additionally, Mr. Giuintoli, during construction of the home, made various changes to the plans and/or specifications either by telephone or by directly communicating with Augustine. Mr. Giuntoli testified at his deposition that he made these visits "to see the quality of the work, the progress that had been made, if there was a deviation from something you thought shouldn't have occurred." Dep. of J. Giuntoli, p. 10.

¶ 36 Mr. Giuntoli also reserved certain aspects of the home construction to other subcontractors, in particular, areas relating to the kitchen, bathroom, and the lighting to be installed in the home. As to these matters, Mr. Giuntoli was overseeing the work of the subcontractors and Augustine was not involved. Thus, from one perspective it could be argued that the Giuntolis were operating as "general" contractors and contracting the work out to a variety of "subcontractors." Additionally, there was an absence of any language in the construction contract that would have acknowledged that the Giuntolis were relinquishing possession of the property to Augustine during construction. Perhaps most relevant to the action before us, Mr. Giuntoli indicated at deposition that he had expressed concerns to Augustine about the use of the gangplank for persons accessing the home after his wife, and certain sub-

contractors and/or visitors had voiced such concerns directly to him.

¶ 37 Viewed as a whole, the record does not paint a picture of a situation where an agreement was reached and Augustine was extended unfettered discretion to deliver a completed structure. Mr. Giuntoli maintained an active oversight of the project to ensure compliance with the contract and quality of work. Moreover, he reserved responsibility for completion of certain parts of the project for himself. Lastly, the fact that he registered a complaint or concern regarding the very means of egress used by Bullman reflects at least a consciousness of some authority to influence decisions regarding the safety of the worksite, if not absolute authority to dictate such matters. Thus, when the whole of the record is considered we believe that there exists at least a jury question as to the applicability of the defense raised by the Giuntolis.[15] Consequently, we cannot affirm the granting of summary judgment on the basis of this theory.

¶ 38 For the above reasons we vacate the order granting summary judgment in favor of Appellees and remand for a continuation of proceedings.

¶ 39 Order vacated. Case remanded. Jurisdiction relinquished.

¶ 40 JOHNSON, J., files a Concurring and Dissenting Opinion.

---

15. In this respect we disagree with the Dissent that resolution of this issue "necessarily demands factual findings." Concurring and Dissenting Opinion at p. 3. Our conclusion today goes no further than to state that the Giuntolis were not entitled to summary judgment below on the "out of possession" theory. The standard for summary judgment is well known and was recited previously. Summary judgment can be granted only when there exists no issue of material fact for resolution by trial and the moving party is entitled to entry of judgment in its favor as a matter of law. When the trial court rules on summary judgment, it is not empowered to resolve factual disputes or act as fact finder, but only to determine whether or not issues of material fact exist. This is not to say that summary judgment can not be granted on a factual record. However, if a resolution of facts is required to grant summary judgment it can only be done when the record so overwhelmingly favors one conclusion that reasonable minds could not differ. In light of this standard, the Giuntolis would not have been entitled to summary judgment below unless the evidence was so overwhelming that reasonable minds could not have differed that the Giuntolis were out of possession. Our conclusion merely recognizes that the evidence is not so overwhelming as to demand this conclusion.

JOHNSON, J., Concurring and Dissenting:

¶ 1 I join my colleagues in so much of the well-reasoned majority opinion as would reverse the order granting summary judgment on the basis of the doctrine of assumption of the risk. The trial court's alleged error in granting summary judgment on this basis is the only issue presented to this Court on this appeal. Nevertheless, James and Barbara Giuntoli, the appellees, argue that even if the trial court was wrong on its analysis of the assumption of the risk, the Giuntolis are entitled to prevail on the basis that they were not in possession of the land upon which the plaintiff's injuries occurred. However, the Giuntolis have not brought a cross-appeal to this Court. The very issue that they ask us to review was included in the matters presented to the trial court but expressly not considered or decided by that court. I believe we are precluded from reviewing this issue and, accordingly, I must respectfully dissent.

¶ 2 Amy S. Bullman, plaintiff, filed the only appeal from the order granting summary judgment. She asks us to consider only one issue. Her Statement of Question Involved sets forth:

> WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE BASIS OF ASSUMPTION OF THE RISK WHERE THERE EXISTED A MATERIAL ISSUE OF FACT AS TO WHETHER THE PLAINTIFF, A VISITOR TO A RESIDENTIAL CONSTRUCTION SITE, SUBJECTIVELY KNEW THAT A PLANK PROVIDING ACCESS WOULD MOVE, CAUSING HER TO LOSE HER BALANCE, STEP ONTO AND FALL THROUGH BOARDS, WHICH APPEARED TO BE WEIGHT–BEARING AND COVERED A PORCH, INTO THE BASEMENT AND BECOME A PARAPLEGIC?

Brief of Appellant at 3. The Giuntolis attempt to inject a second issue into the appeal by setting forth what they describe as a "Counter[-]statement of the Questions Involved," as follows:

> II. WERE DEFENDANTS GIUNTOLI ENTITLED TO SUMMARY JUDGMENT SINCE AS EMPLOYERS OF AN INDEPENDENT CONTRACTOR, THEY WERE NOT IN POSSESSION OF THE LAND AND CANNOT BE HELD LIABLE FOR INJURIES RESULTING FROM WORK PERFORMED THEREON [?].
> (NOT ANSWERED BY THE COURT BELOW)

Brief of Appellees James and Barbara Giuntoli at 1.

¶ 3 Both Bullman and Heinz C. Augustine have objected to the Giuntolis' attempt to engage this Court in a matter not addressed by the trial court, albeit for different reasons. In his Reply Brief, Augustine, the contractor on the job-site where Bullman sustained injury, correctly argues that the Honorable Thomas J. Doerr made no findings of fact at any stage of the proceedings in the trial court regarding who was in possession of the premises at the time of Bullman's fall. Reply Brief for Appellee [Augustine] at 4. I agree with Augustine that it is inappropriate for this Court to undertake the resolution of this issue that necessarily demands factual findings. *See Commonwealth v. Glover*, 497 Pa. 433, 441 A.2d 1216, 1217 (1982) (quoting *Reed v. Universal C.I.T. Credit Corp.*, 434 Pa. 212, 253 A.2d 101, 104 (1969) (declaring that a reviewing court does not sit as trier of issues of fact and will not invade the trial court's area of judicial process)). Before Judge Doerr, Augustine had argued that he should not be found to have been in possession of the premises at the time of Bullman's fall. Reply Brief [Augustine] at 4. He correctly asserts on appeal that Judge Doerr did not reach the issue of possession in his analysis disposing of the motion for summary judgment. *See id.*

¶ 4 Bullman argues similarly. She contends, and I agree, that it is inappropriate

for the Giuntolis to raise an issue that was not presented in Bullman's brief and, further, was not an issue addressed by Judge Doerr in his opinion that formed the basis of the appeal. Reply Brief [Bullman] at 1.

¶ 5 An appellee may not raise issues on appeal not raised by the appellant except by filing a cross appeal. *See Sateach v. Beaver Meadows Zoning Hearing Board of Appeals*, 676 A.2d 747, 751 (Pa.Cmwlth. 1996). Where an appellee addresses an issue on appeal not raised by the appellant and not addressed in a cross-appeal, the issue is deemed waived. *Id.*; *Barnes v. McKellar*, 434 Pa.Super. 597, 644 A.2d 770, 777 n. 5 (1994) (holding request by party as appellee will not be considered where party did not include such request in brief as appellant and no cross-appeal filed).

¶ 6 Our Supreme Court has refused to consider the arguments of an appellee contesting a trial court ruling where appellee took no appeal from the trial court's order. *See City of Philadelphia, Tax Review Bd. v. Manheim Laundry Co.*, 398 Pa. 265, 157 A.2d 372, 374 (1960) (declining to address arguments raised by City of Philadelphia concerning taxation of allegedly non-taxable laundry services, where city failed to file cross-appeal from order imposing partial tax). *Accord Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800, 804 (1984) (holding mother/appellee precluded from raising issue concerning trial court's failure to interview children where no cross-appeal taken). *See also Pennsylvania Human Relations Comm'n. v. Chester Hous. Auth.*, 458 Pa. 67, 327 A.2d 335, 338 n. 12 (1974) (holding housing authority precluded from raising issues decided adversely to it by Commonwealth Court where no appeal taken by authority/appellee).

¶ 7 Similarly, our Court has refused to entertain issues presented by the appellee, where no cross-appeal has been filed. *See and compare Osborne v. Carmichaels Mining Machine Repair, Inc.*, 427 Pa.Super. 159, 628 A.2d 874, 877 n. 3 (1993) (holding estate administratrix/appellee

cannot raise issue concerning propriety of deduction of good will asset from amount due under stock redemption agreement where no cross-appeal filed as permitted under Pa.R.A.P. 903(b)) *with Arcidiacono v. Timeless Towns of the Americas, Inc.*, 363 Pa.Super. 528, 526 A.2d 804, 806 n. 2 (1987) (concluding appellee's allegation of trial court error in charging jury not before this Court where no cross-appeal filed) *and Philadelphia Bond & Mortgage Co. v. Highland Crest Homes, Inc.*, 235 Pa.Super. 252, 340 A.2d 476, 479 n. 1 (1975) (rejecting appellee's attempt to raise an issue concerning corporate defendant's liability on a judgment note where individual defendant/appellant had not raised the matter and appellee had not filed a cross-appeal).

¶ 8 Our scope of review, when reviewing a grant of summary judgment, is limited to determining whether there was an error of law or a clear abuse of discretion by the trial court. *Tenaglia v. Proctor & Gamble, Inc.*, 737 A.2d 306, 307 (Pa.Super.1999). I agree with my colleagues that the trial court erred in granting summary judgment on the basis of assumption of the risk. That ends our task and completes our responsibility. Here, where Judge Doerr did not address the issue that the Giuntolis are raising, there can be no error of law or abuse of discretion for this Court to review in that regard. Having determined that the trial court has erred in deciding the only issue properly before us, the only course is to remand the matter for further proceedings. Upon remand, this Court should refrain from indicating what conclusions might properly be drawn in the event the Giuntolis renew their request for summary judgment based on the alternate theory of owners out of possession, a theory that the trial court has not yet addressed. *See Frey by Frey v. Smith by Smith*, 454 Pa.Super. 242, 685 A.2d 169, 173 (1996) (quoting *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623, 626 (1970) (holding reversal of grant of demurrer does not indicate any conclusion as to what decision

should be, after development of all the facts)). Under our scope of review, all this Court is authorized to declare is that summary judgment should not have been granted based upon a theory of assumption of the risk. *See Id.*

¶ 9 My colleagues invoke *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94, 96 n. 5 (1974) as support for engaging in an issue not addressed by the trial court. I can agree that a reviewing court may, under certain circumstances, affirm the trial court on a different basis than that advanced by the trial court. *Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d 447, 454 (1998); *Boyer v. Walker*, 714 A.2d 458, 463 n. 10 (Pa.Super.1998) (affirming trial court order granting summary judgment). However, I am unaware of any cases where this Court or our Supreme Court undertook to consider an issue not addressed by the trial court in *reversing* the trial court order. The cases cited by my colleagues in footnote 7 of the majority opinion do not support a proposition entitling a reviewing court to entertain issues not addressed by the trial court while reversing an order granting summary judgment. *Boyer*, 714 A.2d at 463 n. 10 and *Fennell v. Nationwide Mutual Fire Insurance Co.*, 412 Pa.Super. 534, 603 A.2d 1064 (1992) both involve matters where this Court *affirmed* an order granting summary judgment, thereby concluding the case, barring further appeal. In *Gutman v. Giordano*, 384 Pa.Super. 78, 557 A.2d 782 (1989), this Court addressed the trial court's reliance on the doctrine of *res judicata* even though the appellant sought to argue that the trial court had erred on an issue of the statute of limitations. *Id.* at 783. In reversing the order granting summary judgment, the *Gutman* court was steadfast in limiting its analysis to the only issue upon which the trial court had relied in granting judgment. *Id.* None of these cases permit a reasonable inference that a reviewing court, while *reversing* on the only issue brought before it, may consider *sua sponte* matters not addressed by the trial court but raised by a non-appealing party in an appellee's brief in violation of Pa.R.A.P. 2112 and 2116(a).

¶ 10 My colleagues have felt "compelled to review and assess the Giuntolis' argument" relying solely on a principle of law inapplicable to matters where the trial court order is being reversed. Majority Opinion at 574. After stating that this Court is empowered to *affirm* the trial court on any basis, my colleagues proceed to find certain facts based upon their "review of the record" and then conclude that they are *unable to affirm* the granting of summary judgment on the theory propounded by the Giuntolis. In my view, this analysis violates the rule of law upon which my colleagues enter into their review and intrudes upon the proper role of the trial court as the exclusive fact-finder. *Donnelly*, 720 A.2d at 454; *Reed*, 253 A.2d at 104.

¶ 11 For all of the above reasons, I must respectfully dissent from so much of my esteemed colleagues' decision as undertakes an analysis of an issue that has not been presented by the appellant but has merely been submitted as a "counter-statement" by an appellee who has not filed a cross-appeal.