J-A02010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BIJU JOHN AND MINI BIJU INDIVIDUALLY AND TOGETHER AS H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ST. THOMAS INDIAN ORTHODOX CHURCH, INC. AND REV. FR. M.K. KURIAKOSE | |
| APPEAL OF:  BIJU JOHN | No. 1223 EDA 2016 |

Appeal from the Order March 21, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2014 No. 1605

BEFORE:  OTT, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 20, 2017**

Biju John ("Appellant"), appeals from the order of the trial court entered March 21, 2016, in the Court of Common Pleas of Philadelphia, that granted summary judgment in favor of St. Thomas Indian Orthodox Church and Rev. Fr. M.K. Kuriakose ("Appellees") in this negligence action. The action arose as a result of injuries Appellant sustained in a tug of war game at a church picnic.  Appellant contends (1) the trial court erred in determining that his claim was barred based on assumption of the risk and that Appellees could not be found negligent, and (2) the trial court erred in

determining that no duty existed on the part of Appellees. Based upon the

following, we affirm.

The trial court ably summarized the facts underlying this appeal:

[Appellant], a church parishioner, was injured when he voluntarily engaged in a game of tug of war at church. [Appellant] claims injuries as a result of the opposing tug of war team pulling [and letting go of[1]] the rope too early, which caused team members to collide. [Appellant] claims the players pulled the rope too early because of an act by Fr. Kuriakose, which caused his injury. [Appellant] alleges that he suffered serious and permanent injuries including a torn right ACL requiring surgical intervention, as well as injuries to his head, neck, back, as well as to the bones, tissues and ligaments attached thereto. [Appellant] cannot identify who told him about the signal that Fr. Kuriakose allegedly gave, which caused team members to pull the rope too early. This was the second game of tug of war that [Appellant] had participated in that day.

Trial Court Opinion, 6/1/2016, at 2.

The principles that guide our review are well settled:

Our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established

_____

[1] **See** Plaintiffs' Fifth Amended Complaint, 3/26/2015, at ¶9.

that the court committed an error of law or abused its discretion.

*Loughran v. Phillies*, 888 A.2d 872, 874 (Pa. Super. 2005) (citation omitted).

> [T]o grant summary judgment on the basis of assumption of the risk it must first be concluded, as a matter of law, that the party [1] consciously appreciated the risk that attended a certain endeavor, [2] assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk involved, and [3] that the injury sustained was, in fact, the same risk of injury that was appreciated and assumed.

*Bullman v. Giuntoli*, 761 A.2d 566, 573 (Pa. Super. 2000).

Appellant argues the trial court erred in determining he assumed a risk of harm causing injury to him. He claims he had a reasonable expectation of how the tug of war game was to be played, and he could not have appreciated the risks associated with altering the rules of the game, as he alleges was done in this matter. Appellant's Brief at 11–12. He points to the deposition testimony of his wife, Mini Biju, "who saw Defendant Kuriakose specifically alter the game of tug of war by telling one team to pull and let go causing the other team to fall to the ground." *Id.* at 12.

Appellant claims the trial court also erred in granting summary judgment based on the assumption of the risk doctrine. He maintains "there are clear issues of material fact as it relates to whether Appellant voluntarily encountered a known or obvious danger," and "there is a material issue of fact as to the negligent conduct of Rev. Fr. Kuriakose." *Id.* at 13.

Secondly, Appellant claims the trial court "erred in its decision that no duty existed on the part of Appellee[s]." *Id.* at 15. Appellant asserts Appellees were in control of the public park, and there is no dispute "that the tug of war activity took place at a church-sponsored event at that park" and "that [A]ppellee, Rev. Fr. Kuriakose was in charge of the tug of war game in question." *Id.* at 15.

Appellant states "on the date of the church picnic, Appellees leased and controlled the area of the park where their picnic was taking place." *Id.* He further states that "Appellees invited church members such as [A]ppellant[] to attend and participate in games such as the tug of war game in question." *Id.* Appellant argues "the facts of the instant case support the assertion that as possessors of land, Appellees owed the highest duty to Appellant as a business invitee on the day of the church picnic." *Id.* In this regard, Appellant asserts Appellees had a duty to warn Appellant "of any potential dangers that might exist, specifically as it relates to the games played on the date of the incident." *Id.* at 15–16, *see also id.* at 16, *citing* Restatement (Second) of Torts § 343 ("Dangerous Conditions Known to or Discoverable by Possessor"). He maintains "there is clearly an issue of material fact as to whether Appellee[s] should have known altering the game of tug of war would have created unnecessary dangerous condition and situation resulting in injury." *Id.* at 17.

The questions of whether Appellees owed Appellant a duty, and the question of whether Appellant assumed the risk of his conduct, are intertwined, and therefore we address them together. As this Court has explained:

> [A]ssumption of the risk operates merely as a corollary of the absence of a duty; to the extent the injured plaintiff proceeded in the face of a known danger, he relieved those who may have otherwise had a duty, implicitly agreeing to take care of himself. …. *Carrender v. Fitterer*, 469 A.2d 120, 124, 503 Pa. 178 (Pa. 1983). In *Carrender*, which remains controlling precedent in Pennsylvania, our Supreme Court established that assumption of the risk is, as the trial court explained, a function of the duty analysis:
>
>> Appellee misperceives the relationship between the assumption-of-risk doctrine and the rule that a possessor of land is not liable to his invitees for obvious dangers. ***When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself.*** It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.
>
> *Carrender,* 469 A.2d at 125 (citations omitted).
>
> Under this formulation, … the question of assumption of the risk typically remains for the jury. Only where the evidence reveals a

> scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct can the court enter summary judgment; in effect the court determines that the plaintiff relieved the defendant of the duty to guard him from a risk of harm regardless of the source from which the duty derived. *See Lewis,* 833 A.2d at 190; *Carrender,* 469 A.2d at 125

*Montagazzi v. Crisci*, 994 A.2d 626, 635-36 (Pa. Super. 2010).

The assumption of the risk defense, as applied to sports and places of amusement, has also been described as a "no-duty" rule, *i.e.*, as the principle that an owner or operator of a place of amusement has no duty to protect the user from any hazards inherent in the activity. *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1186 (Pa. 2010). In the present case, the trial court recognized that the assumption of the risk doctrine arises in cases involving sporting events when the player or spectator "knows that an accident or injury may occur … and that by playing or watching he voluntarily assumes the risk of injury." Trial Court Opinion, 6/1/2016, at 3 (citations omitted).

In granting summary judgment in favor of Appellees, the trial court relied on *Bowser v. Hershey Baseball Assoc.*, 516 A.2d 61 (Pa. Super. 1986), where this Court affirmed the compulsory nonsuit entered against the plaintiff who was struck in eye by a batted baseball while conducting tryouts. The trial court here reasoned:

> In [*Bowser*], the Plaintiff agreed to participate in baseball tryouts, he voluntarily exposed himself to the risks inherent in baseball. The court reasoned that having exposed himself to the risk associated with baseball such as being hit by a batted ball,

Plaintiff could not recover from the sponsor of the baseball event for injuries caused by this very risk. *Id.* Persons conducting activities have no duty to warn or protect participants against risks which are common, frequent, expected and inherent in the activity itself. *Id.* Thus, persons conducting the event are not negligent for failing to warn or protect a participant against risk which are inherent in the activity. *Id.*

In the present case, [Appellant] voluntarily participated in the tug of war game at the church. [Appellant] knew the risks associated with the game of tug of war because he played the game twice. [A risk which is] common in tug of war is falling down amongst your team members. [Appellant] assumed the risk of the tug of war game. …

… Later in discovery Mini Biju testified in her deposition that she saw Father Kuriakose hold his hand to his mouth and tell the other team to "pull it and drop." This testimony does not change the fact that [Appellant] assumed the risks that are inherent in the game of tug of war; falling, and that to establish negligence there must exist a duty. Persons conducting activities have no duty to warn or protect participants against risks which are common, frequent, expected and inherent in the activity itself. No duty was owed to [Appellant] while he was participating in the game. The rules and risks of the game were not altered in a way where the duty to [Appellant] changed at any time.

Trial Court Opinion, 6/1/2016, at 4.

We agree with the trial court that the present case aligns with

*Bowser*. To the trial court's rationale, we add:

[T]he rationale adopted by the courts for this rule [voluntary assumption of the risk] is that persons conducting the activity have no duty to warn or protect participants against risks which are common, frequent, expected and inherent in the activity itself. **See: *Jones v. Three Rivers Management Corp., supra***, 483 Pa. at 85, 394 A.2d at 551 [1978]. Thus, persons conducting an event are not negligent for failing to warn or protect a participant against risks which are inherent in the activity.

*Bowser, supra*, 516 A.2d at 64.

Tug of war is defined as "a contest in which two teams pull against each other at opposite ends of a rope with the object of pulling the middle of the rope over a mark on the ground." https://www.merriam-webster.com/dictionary/tug-of-war. Like the plaintiff in **Bowser** who had assumed the risk of being struck by a batted ball, Appellant knew of and assumed the risks of playing tug of war. It cannot be disputed that falling down and colliding with other teammates are obvious and inherent risks of tug of war. The tug of war game at issue was the second game Appellant played in that day.

Further, the injuries suffered by Appellant occurred in playing the tug of war game, after he fell to the ground with other team members — a risk that was "common, frequent, expected and inherent in the activity itself." **Bowser, supra**. Although Appellant relies on the deposition testimony of Mini Biju concerning the alleged conduct of Fr. Kuriakose, his reliance is misplaced. Her testimony would be relevant only to Appellees' negligence, which is not at issue as Appellant assumed the risk of playing tug of war and had no further duty toward him.

Therefore, on this record, we conclude the trial court properly granted summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/20/2017